IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LATRICE SAXON, Individually, and on Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| | ) Case No. 1:19-cv-00403 |
| SOUTHWEST AIRLINES CO., | ) ) |
| Defendant. | ) ) ) |

**PLAINTIFF'S BRIEF ON THE APPLICABILITY OF SECTION 1 OF THE FEDERAL ARBITRATION ACT**

This Court has requested that the Parties submit briefs on the threshold issue of whether the Section 1 exemption of the Federal Arbitration Act ("FAA") applies to Plaintiff Latrice Saxon and other similarly-situated Ramp Supervisors, so as to determine whether to compel arbitration. (D.E. 26.) Plaintiff submits this brief demonstrating the applicability of Section 1 of the FAA and in response to Southwest Airlines Co.'s supplemental brief. (D.E. 27.)

**ARGUMENT**

Plaintiff, on behalf of herself and all others similarly situated, filed a Collective Action Complaint against Defendant for alleged violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. (the "FLSA"). Specifically, Plaintiff alleges that Defendant classified her and all other similarly-situated Ramp Supervisors as non-exempt under the FLSA, paid them an hourly rate, but did not pay for all time it encouraged, suffered, and/or permitted them to work. (D.E. 1.) Defendant filed a Motion to Dismiss or Stay In Favor of Arbitration, suggesting the matter should be dismissed or alternatively stayed under 9 U.S.C. § 3 because Plaintiff purportedly agreed to individually arbitrate all wage and hour-related claims against Defendant. (D.E. 14.)

1

The FAA was enacted by Congress in 1925 to provide a solution to the general hostility of the courts to enforce arbitration agreements. *Muller v. Roy Miller Freight Lines, LLC*, 34 Cal.App.5th 1056, *1062 (2019). The FAA, therefore, compels the enforcement of a variety of written arbitration contracts, notwithstanding any applicable state substantive or procedural policies to the contrary. *Id*. The FAA extends to all contracts "evidencing a transaction involving commerce," or arising from a "maritime transaction." 9 U.S.C. § 2.

Section 1 of the FAA, however, provides an important exemption for "contracts of employment of seaman, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. The United States Supreme Court clarified that Section 1's catchall phrase "or any other class of workers engaged in foreign or interstate commerce" does not refer to every worker involved in interstate commerce, but rather just "transportation workers." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001). "[T]he Court concluded that Congress intended the term 'engaged in commerce' exception should be construed to only apply to 'transportation workers,' those workers 'actually engaged in the movement of goods in interstate commerce,' and not to employment contracts in general." *Zamora v. Swift Transp. Co.*, 2008 WL 2369769, *5 (2008) (quoting *Circuit City Stores, Inc.*, 532 U.S. at 112, 119). However, because "[t]he term 'transportation worker' was not at issue in *Circuit City* . . . the Supreme Court did not adopt a specific definition." *Muller*, 34 Cal.App.5th at 1063.

Since the Supreme Court's decision in *Circuit City*, state and federal courts across the country have wrestled with the notion of "transportation worker" and the characteristics necessary for an employee to be considered a transportation worker, but very little consensus has been made on how to determine whether a worker is so engaged.[1] *Id*. Highlighting how diverse the courts'

---

[1] The Seventh Circuit has not specifically addressed the meaning of "transportation worker," limiting its analysis to the vague description noted by the Supreme Court in *Circuit City*. *See Intern'l Bhd. of Teamsters*

inquiries have been across the country, the *Muller* court notes the variety of factors that have been considered. For example, courts have focused on a wide variety of considerations to determine the "transportation worker" issue including: whether the employer is in the transportation industry (*see Hill v. Rent-A-Center, Inc.*, 398 F.3d 1286 (11th Cir. 2005)); the nature of the specific employee's work (*see Kowalewski v. Samandarov*, 590 F.Supp.2d 477 (S.D.N.Y. 2008)); whether the particular employee traveled across state lines (*see Intern'l Bhd. of Teamsters Local Union No. 50*, 702 F.3d 954 (7th Cir. 2012)); or, whether an employee's duties entailed the handling of goods in the stream of interstate commerce (*see Wallace v. Grubhub Holdings*, 2019 WL 1399986 (N.D. Ill., Mar. 28, 2019)). *Muller*, 34 Cal.App.5th at 1063-64. The *Muller* court further noted that "[t]he decisions become more varied when the employee is one step removed from the actual physical delivery of goods." *Id*. at 1064. "Suffice it to say there is no agreed-upon bright-line rule on who falls within the section 1 exemption." *Id.*

### I. PLAINTIFF IS EXEMPT UNDER SECTION 1 OF THE FAA BECAUSE SHE IS A TRANSPORTATION WORKER.

Although there is no firm consensus on how to determine whether an employee is a "transportation worker" under the FAA, courts have often adopted the eight-factor test promulgated by the Eighth Circuit in *Lenz. Zamora*, 2008 WL 2369769 at *6 (citing *Lenz v. Yellow Transp., Inc.*, 431 F.3d 348, 352 (8th Cir. 2005)). "In *Lenz*, the Eighth Circuit Court of Appeals attempted to synthesize the factors courts often consider in determining the exemption applies, and it identified eight 'non-exclusive' factors for consideration when evaluating whether an employee 'is so closely related to interstate commerce that he or she fits within the § 1 exemption of the

---

*Local Union No. 50 v. Kienstra Precast, LLC*, 702 F.3d 954, 956 (7th Cir. 2012) ("By 'transportation workers,' the Supreme Court meant workers, like the 'seamen and railroad employees' expressly referenced in § 1, that are 'actually engaged in the movement of goods in interstate commerce.'") (quoting *Circuit City*, 532 U.S. at 112.)

3

FAA.'" *Muller,* 34 Cal.App.5th at 1064 (quoting *Lenz*, 431 F.3d at 352). The non-exclusive *Lenz* factors include whether: (1) the employee works in the transportation industry; (2) the employee is directly accountable for transporting goods in interstate commerce; (3) the employee deals with goods or products that travel interstate; (4) the employee supervises employees who are themselves transportation workers; (5) the employee is within a class of employees for which special arbitration already existed when Congress passed the FAA; (6) the vehicle itself is crucial to the commercial enterprise of the employer; (7) a strike by the employee would disrupt interstate commerce; and (8) the nexus that exists between the employee's job duties and the vehicle used in carrying out those duties. *Lenz*, 431 F.3d at 352.

### A. Plaintiff Is A Transportation Worker Under The *Lenz* Factors.

Application of the eight *Lenz* factors to this case clearly shows Plaintiff is a "transportation worker" under the FAA subject to the Section 1 exemption. As a Ramp Supervisor, one of Plaintiff's duties was to supervise the Ramp Agents. *See* Ex. 1 – Saxon Declaration, ¶ 4. On a daily basis, Ramp Agents are responsible for loading and unloading the plane of the various goods and cargo shipped across the country including passenger luggage, various food and beverage products, various electronics, computers, fish, parts for machines, and a multitude of other goods distributed throughout the country which travel in the stream of commerce. *Id.* at ¶ 3. Each day, these material goods are loaded into the majority of Southwest passenger planes in the cargo storage area. *Id.* at ¶ 3. In addition to supervising the Ramp Agents to monitor that the goods and cargo are properly loaded and unloaded, Ramp Supervisors, including Plaintiff, would frequently (*i.e.*, multiple times each week) step into the shoes of the Ramp Agent and load and unload the goods and cargo from the planes themselves. *Id.* at ¶ 4; *see also* Ex. 2 – Ramp Supervisor Job Description (requiring supervisors to be able to lift 70 lbs. or more on a regular basis and

4

repetitively lift weights of 40 to 50 lbs. on raised surfaces). Plaintiff is well aware that other Ramp Supervisors, like herself, loaded and unloaded the goods and cargo from the planes because she witnessed them on a daily basis performing these tasks. Ex. 1 at ¶ 5.

### 1. Plaintiff Works in the Transportation Industry.

First, Plaintiff, an employee for a large international airline, clearly works in the transportation industry. The first *Lenz* factor weighs in favor of concluding Plaintiff is a transportation worker.

### 2. Southwest is Directly Accountable for Transporting Goods in Interstate Commerce.

Second, Plaintiff was responsible as a supervisor and active participant in the movement of goods and cargo in interstate commerce, and this factor weighs in her favor. Specifically, Plaintiff was directly responsible for the transportation of goods in interstate commerce. Her duties included directing and supervising Ramp Agents to make sure the planes were timely and efficiently loaded and unloaded with the goods and cargo being shipped across the country. Ex. 1 at ¶ 4. Additionally, Ramp Supervisors, themselves, loaded and unloaded the planes of the goods and cargo multiple times each work week. *Id*. Plaintiff's supervisory role over the Ramp Agents had a direct connection to the amount of goods carried in interstate commerce and the efficiency of the instrumentalities of interstate commerce. *Id.* at ¶ 8. Plaintiff was responsible to ensure the efficient and continuing operations of the planes and the Ramp Agents, all having a direct and significant impact on interstate commerce. *Id*. This factor, therefore, weighs in favor of Plaintiff being a transportation worker.[2]

---

[2] In *Palcko*, for example, the plaintiff worked as a Field Services Supervisor whose duties included supervising drivers who delivered packages from the company's facility to their ultimate destination within the state, and picked up packages from customers in the area and brought them back to the facility for shipment. *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 590 (3rd Cir. 2004). The defendant contended the plaintiff should not be considered a transportation worker because she was a supervisor and the

### 3. Plaintiff Deals With Goods and Products That Travel Interstate.

Third, Plaintiff directly handled the goods and cargo that moved in interstate commerce. As noted, Ramp Supervisors physically loaded and unloaded the planes of goods and cargo multiple times each week. *Id*. at ¶ 4. This factor weighs in favor of Plaintiff being a transportation worker.

### 4. Plaintiff Supervises Ramp Agents Who Are Themselves Transportation Workers.

Fourth, Plaintiff supervised Ramp Agents whose main duty was to load and unload the plane with the goods and cargo that are shipped across the country. *Id*. at ¶ 3. The Ramp Agents' duties were certainly "so closely related [to the transport of the goods] as to be in practical effect part of [the shipping of the good]." *Palcko*, 372 F.3d 593. Accordingly, this is another factor that weighs in favor of Plaintiff.[3]

---

transportation worker exemption only applied to those employees who physically move the goods. *Id*. at 593. However, the court rejected this argument, finding the plaintiff, whose duties included "monitoring and improving the performance of drivers under [her] supervision to insure [sic] timely and efficient delivery of packages" was clearly a transportation worked because her duties were "so closely related [to the transport of the goods] as to be in practical effect part of[the shipping of the goods]." *Id*. (quoting *Tenney Engineering, Inc. v. United Electrical Radio & Machine Workers of America*, 207 F.2d 450, 452 (3rd Cir. 1953)); *see also Zamora*, 2008WL 2369769 at *9 ("Zamora was responsible for terminal operations, an integral part of the transportation of goods in interstate commerce. Based upon both the Eighth Circuit's analysis in *Lenz* and the Third Circuit's analysis in *Packlo*, the Court concludes that Zamora was a transportation worker.").

[3] The Seventh Circuit "has not explicitly held that personal interstate travel is a requirement of the exemption [.]" *Wallace*, 2019 WL 1399986, *3; *see also*, *Intern'l Bhd. of Teamsters Local Union No. 50*, 702 F.3d at 957. However, multiple courts have held that personal interstate travel is *not* absolutely necessary for Section I of the FAA to apply. "If we were to accept that limitation, we would unnecessarily narrow the section 1 exemption in a way never intended by the FAA; had Congress intended the residual clause of the exemption to cover only those workers who physically transport goods across state lines, it would have phrased the FAA's language accordingly." *Palcko*, 372 F.3d at 594; *see also Nieto v. Fresno Beverage Co., Inc.*, 33 Cal.App.5th 274, 281 (2019) ("a transportation worker does not necessarily have to physically cross state lines in order to engage in the movement of goods in interstate commerce."); *Christie v. Loomis Armored US, Inc.*, 2011 WL 6152979, *3 (D.Colo. 2011) (An individual "need not actually transport goods across state lines to be part of a class of employees engaged in interstate commerce. 'Interstate commerce' includes not only goods that travel across state lines but also 'the intrastate transport of goods in the flow of interstate commerce.'"); *Muller*, 34 Cal.App.5th at 1069 ("Thus, even though [plaintiff] was not personally transporting goods from state to state, he played an integral role in transporting

### 5. Plaintiff Is Not Within a Class of Employees for Which Special Arbitration Exists.

Fifth, it is unclear whether Plaintiff is among a class of employees for whom a special arbitration existed at the time that the FAA was enacted; therefore, this factor weighs against finding Plaintiff to be a transportation worker.

### 6. Planes Are Crucial to the Commercial Enterprise of Southwest and a Ramp Supervisor Strike Would Disrupt Interstate Commerce.

The sixth and seventh factors, the importance of vehicles at issue – airplanes - to Southwest's business and the impact a strike would have on interstate commerce, both support a finding that Plaintiff is a transportation worker. Planes are Southwest's business and directly tied to operations and the economic viability of the company. A strike by Plaintiff and other Ramp Supervisors would clearly have a negative impact on the ability of Southwest to function. Ex. 1 at ¶ 8. An airline with a reduced ability to operate would negatively impact interstate commerce because airlines constitute a significant instrumentality of the shipment of goods in interstate commerce.

### 7. There Is a Clear Nexus Between Plaintiff's Job Duties and the Planes Used in Carrying Out Those Duties.

Finally, the eighth factor, the nexus between the employee's job duties and the vehicle (*i.e.,* plane) the employee uses in carrying out the duties, also supports a finding that Plaintiff is a transportation worker. Although Plaintiff did not fly the plane herself, the plane is integral to her job responsibilities as Ramp Supervisor. Plaintiff was responsible for monitoring the Ramp Agents and the loading and unloading of goods and cargo from the planes. *Id*. at ¶ 4. Her job directly

---

those goods through interstate commerce. We therefore conclude [plaintiff] is exempt from FAA coverage.").

involved the operation of planes at Southwest; therefore, the eighth factor weighs in favor of Plaintiff as a transportation worker.

Thus, the first, second, third, fourth, sixth, seventh, and eighth factors clearly support a finding that Plaintiff is a transportation worker under the FAA. Given that the majority of the *Lenz* factors weigh in favor of Plaintiff, this Court should find that Plaintiff is subject to the exemption under Section 1. *See, Zamora*, 2008 WL 2369769 at *8 (concluding plaintiff was a transportation worker based on the majority of the *Lenz* factors weighing in plaintiff's favor); *Muller*, 34 Cal.App.5th at 1069 (holding plaintiff was a transportation worker when six of the eight *Lenz* factors weighed in favor of plaintiff).

## II. SOUTHWEST'S SUPPLEMENTAL BRIEF IS FLAWED

In its supplemental brief, Southwest makes several unpersuasive arguments on why the FAA Section 1 exemption should not apply. First, Southwest suggests it is a passenger airline, not "primarily" involved in the movement of goods and, therefore, its employees do not fall within the Section 1 exemption of the FAA. (D.E. 27 at 2-4.) But it is undisputed that Southwest routinely moves both passengers *and* goods. And while no hardline set of factors used to determine whether a class of employees falls under the exemption, a thorough analysis of the *Lenz* factors has become an accepted means by which to determine its applicability, particularly when the employee is one step removed from the actual physical delivery of goods. Second, Southwest points out that Plaintiff, Ramp Supervisors, and Ramp Agents do not physically carry goods across state lines. (*Id*. at 4-6.) However, personal interstate travel is *not* a requirement of the exemption. Finally, Southwest argues that its interpretation of the FAA Section 1 exemption is somehow consistent with the exemption's purpose and scope. (*Id*. at 6-7.) Southwest is wrong; an application of the

*Lenz* factors, noted above, clearly favor a finding that Plaintiff falls within the class of individuals exempt from the FAA's requirements.

### A. Southwest Is Engaged In The Movement Of Goods In Interstate Commerce.

Southwest claims it is a passenger airline, not primarily involved in the movement of goods, and, thus, its employees do not fall under the Section 1 exemption of the FAA. (D.E. 27 at 2-4.) Southwest relies almost exclusively on *JetBlue Airways Corp. v. Stephenson*, 2010 WL 6781684 (Sup. Ct. 2010) for this premise. However, the analysis is by definition highly fact-specific and *JetBlue Airways* is clearly distinguishable.

In *Jetblue*, the court addressed the applicability of the FAA to the employment contracts of passenger airline pilots. *Jetblue*, 2010 WL 6781684 at *1. In an effort to determine the meaning of the residual clause of the Section 1 exception of "transportation workers" defined as "those workers actually engaged in the movement of goods in interstate commerce," (quoting *Circuit City*, 532 U.S. at 119), the Court relied on an analysis conducted by a New York federal court. *Id*. at *2. "A thorough analysis by the U.S. District Court for the Southern District of New York further limited the exception by finding 'the involvement of physical goods to be an indispensable element to being engaged in commerce in the same way that seamen and railroad workers are . . . that is, being a member of an industry that primarily involves the actual, physical movement of goods through interstate commerce." *Id*. (quoting *Kowalewski v. Samandarov*, 590 F.Supp.2d 477, 484 (S.D.NY 2008). In both *Jetblue Airways* (*i.e.*, airline pilots) and *Kowalewski* (*i.e.,* Black Car drivers) the court found the Section 1 exemption of the FAA did not apply because the class of workers at issue primarily transported passengers and not goods or cargo. However, the *Kowalewski* court, which *Jetblue Airways* relied on for its analysis of "transportation worker," acknowledged that "[a]lthough other circuit courts throughout the country have addressed the

9

topic, little consensus has been realized." *Kowalewski*, 590 F.Supp.2d at 482. The *Kowalewski* court further noted:

> The Court acknowledges, but declines to explicitly follow, the analysis articulated by the Eighth Circuit in *Lenz v. Yellow Transp., Inc.*, 431 F.3d 348 (8th Cir. 2005), setting forth eight 'non-exclusive' factors to consider 'in determining whether an employee is so closely related to interstate commerce that he or she fits within the § 1 exemption of the FAA.' *Id.* at 352-53. While *Lenz* informs the Court's analysis, the *Lenz* factors were formulated in a specific context—determining whether a worker one step removed from the actual physical delivery of goods fell under the residuary exemption—not at issue in the instant case.

590 F.Supp.2d at 482, n.3.

Our facts or more aligned with those in *Lenz*; that is, a class of workers one-step removed from the actual physical delivery of goods, whereas *Jetblue Airways* and *Kowalewski* both involved a class of workers whose primary job was to transport passengers. Therefore, Southwest's reliance on *Jetblue Airways* and its analysis of "transportation workers" is unconvincing. Instead, the proper analysis this Court should follow are the *Lenz* factors, which clearly favor a finding that Plaintiff, and the class of workers that she belongs to, are "transportation workers" that fall under the Section 1 exemption of the FAA.[4]

Next, Southwest claims that because it allegedly transports a greater quantity of passengers than goods and cargo, it is legally considered a "passenger airline" rather than a "cargo airline" which somehow prevents application of the exemption. Southwest is wrong. While Southwest obviously transports passengers, a substantial and material component of its business is also the

---

[4] Southwest also cites to *Borgonia v. G2 Secure Staff, LLC,* 2019 WL 1865927 (2019) which involved a class of employees who physically worked at San Francisco International Airport through a third-party called G2 Secure Staffing, LLC ("G2"). The class of employees in *Borgonia* provided wheelchair assistance and security screening for G2. *Id.* at *1. The court held that since "G2 provides aviation services, not services related to the transportation of goods[,]" unlike here, then § 1's exemption to the FAA did not apply. Ramp Supervisors at Southwest are directly engaged in services related to the transportation of goods and Southwest, unlike G2, is clearly in the transportation industry.

10

transportation of goods and other cargo that remain in the stream of commerce.[5] And as the Seventh Circuit clearly noted, "there is no basis in the text of § 1 for drawing a line between workers who do a lot of interstate transportation work and those who cross state lines only rarely; both sorts of workers are 'engaged in foreign or interstate commerce.'" *Intern'l Bhd. of Teamsters Local Union No. 50,* 702 F.3d at 958. This same rationale should also apply to the ratio between goods and passengers transported in interstate commerce too. *See Siller v. L & F Distributors, Ltd.*, 109 F.3d 765, *2 (1997) ("even if the hauls contain only slight amounts of goods traveling in interstate commerce, they will be deemed interstate commerce in its entirety."); *see also Lepera v. ITT Corp.,* 1997 WL 535165, *7 (E.D.Pa. Aug. 12, 1997) ("This court finds that [plaintiff], as a pilot engaged in interstate transportation, is excluded from coverage by the FAA. It is simply nonsensical to exclude from coverage those workers engaged in direct transportation of goods, but not those engaged in the direct transportation of persons. Such a holding would lead to the absurd result that [plaintiff], and pilots like him, would be covered by the FAA if they were carrying only [defendant's] executives, but would not be covered if those same executives gave them goods to carry, but choose not to accompany those goods on the flight."). Southwest's proposition that the exemption does not apply based on its self-serving characterizing of itself as "primarily" a passenger airline should be rejected.

### B. Plaintiff Need Not Directly Move Goods Herself Across State Lines For The FAA's Section 1 Exemption To Apply

Southwest next suggests that since Ramp Supervisors and/or Ramp Agents do not physically, themselves, personally carry goods and cargo across state lines, they are not

---

[5] As recently as last year, Southwest was recognized for its achievements in the cargo industry. *See* https://www.swacargo.com/swacargo_com_ui/content/about/assets/pdfs/Diamond_Award.pdf; https://www.swacargo.com/swacargo_com_ui/about/awards (last visited July 30, 2019). Material goods remaining in the stream of commerce are loaded each day into the majority of Southwest planes in the cargo storage area. Ex. 1 at ¶ 3.

11

"transportation workers" subject to the Section 1 exemption. (D.E. 27 at 4-6.). This is a remarkable oversimplification. Because "[t]he term 'transportation worker' was not at issue in *Circuit City* . . . the Supreme Court did not adopt a specific definition." *Muller*, 34 Cal.App.5th at 1063. And since the decision in *Circuit City*, state and federal have grappled with the notion of "transportation worker" and the characteristics necessary for an employee to be considered a transportation worker, but very little consensus has been made on how to determine whether a worker is so engaged. *Id*. "The decisions become more varied when the employee is one step removed from the actual physical delivery of goods." *Id*. at 1064. "Suffice it to say there is no agreed-upon bright-line rule on who falls within the section 1 exemption." *Id.* In reference to the alleged requirement that workers need to physically cross state lines, "[t]he Seventh Circuit has not explicitly held that personal interstate travel is a requirement of the exemption[.]" *Wallace*, 2019 WL 1399986, *3; *see also, Intern'l Bhd of Teamsters Local Union No. 50*, 702 F.3d at 957. However, numerous other courts have addressed this issue and have concluded that a transportation worker does not necessarily have to physically cross state lines to be part of a class of employees engaged in interstate commerce. *See Palcko*, 372 F.3d at 594; *Nieto*, 33 Cal.App.5th at 281; *Christie,* 2011 WL 6152979, *3; *Muller*, 34 Cal.App.5th at 1069.

      Southwest relies on several cases that are clearly inapposite. First, in *Wallace*, the class of employees included delivery drivers for the food-delivery service Grubhub. 2019 WL 1399986 at *1. The delivery drivers were responsible for delivering prepared meals, via car or bike, from restaurants to customers. *Id*. The court held the delivery drivers "do not belong to a class of workers engaged in interstate commerce" because "[t]heir day-to-day duties do not involve handling goods that remain in the stream of interstate commerce, traveling to and from other state." *Id*. at *4. Unlike the prepared meal that once delivered, stop the flow of interstate commerce, the goods and

cargo Southwest Ramp Agents and Ramp Supervisors load and unload each day are raw products, such as parts for machines, that continue across state lines in the interstate stream of commerce.

Next, in *Furlough v. Capstone Logistics, LLC,* 2019 WL 2076723 (N.D. Cal. May 19, 2019), the class of employees at issue involved freight handlers. The court noted, "Plaintiffs who oversee the transportation of goods in the transportation industry are also transportation workers." *Id.* at *7. However, the plaintiff in *Furlough* neither personally transported goods in interstate commerce nor was he able to demonstrate the defendants were a transportation industry. *Id*. Although the Ramp Supervisors here do not physically cross state lines delivering goods, they would still meet the test noted in *Furlough* because they are engaged in the movement of commerce either by supervising Ramp Agents who load and unload goods and cargo from the planes, they physically load and unload the planes themselves engaging in the movement of commerce, and there is certainly no dispute Southwest is in the transportation industry.

In *Borgonia*, the class of employees at issue provided services such as wheelchair assistance and security screening for a company called G2 Staffing, LLC at San Francisco International Airport. 2019 WL 1865927 at *1. Although the class of employees at issue were physically located at San Francisco International Airport, "they worked for a company (G2) that provided aviation services such as ground handling, passenger assistance, terminal services, and special services." *Id*. at *4. The court held that because "G2 provides aviation services, not services related to the transportation of goods[,]" § 1's exemption to the FAA did not apply. *Id*. Unlike in *Borgonia*, Ramp Supervisors are directly engaged in services related to the transportation of goods and Southwest, unlike G2, is indeed in the transportation industry.

Finally, in *Lee v. Postmates Inc.,* 2018 WL 6605659, *1 (2018), the class of employees involved couriers engaged in *intrastate* delivery of various products. The *Lee* court held the

13

plaintiffs failed to meet their burden of showing that the class of workers fell within the Section 1 exemption because they "presented no evidence [plaintiff] actually delivered goods across state lines, that 'her job involved handling goods *in the course of interstate commerce*,' or that '[defendant] itself was in the business of transporting goods between states.'" *Id*. at *2 (citing *Lee v. Postmates, Inc.*, 2018 WL 4961802 (N.D. Cal. Oct. 15, 2018)) (emphasis in original). However, unlike *Lee*, Ramp Supervisors *do* handle goods in the course of interstate commerce and Southwest, unlike Postmates, Inc., is undeniably in the transportation industry.

### C. Southwest's Interpretation Of The FAA Section 1 Exemption Is Inconsistent With The Exemption's Purpose And Scope

Southwest's final argument centers on the unremarkable fact that "Plaintiff does not contend that her FLSA claim should be governed by any of the industry specific statutes that the Section 1 exemption of the FAA defers to[.]" (D.E. 27 at 7.) This is undisputed; it is unclear whether Plaintiff is among a class of employees for whom special arbitration existed at the time that the FAA was enacted. This factor does weigh against a finding that Plaintiff is a transportation worker. However, this is but one factor out of the eight non-exclusive *Lenz* factors. No one factor is dispositive. As noted above, though, based on the fact that the majority of the *Lenz* factors weigh in favor of finding Plaintiff to be a transportation worker, the Section 1 exemption to the FAA applies here. *See, Zamora*, 2008 WL 2369769 at *8 (the court concluded plaintiff was a transportation worker based on the majority of the *Lenz* factors weighing in plaintiff's favor); *Muller*, 34 Cal.App.5th at 1069 (the court found plaintiff to be a transportation worker when six of the eight *Lenz* factors weighed in favor of plaintiff).

## **CONCLUSION**

WHEREFORE, for all the foregoing reasons, Plaintiff, Latrice Saxon, on behalf of herself and others similarly situated, requests that this Court find Plaintiff is a "transportation worker" exemption under Section 1 of the FAA.

Respectfully Submitted,

*/s/ Andrew C. Ficzko*
One of the Attorneys for Plaintiff

Ryan F. Stephan
James B. Zouras
Andrew C. Ficzko
STEPHAN ZOURAS, LLP
100 N. Riverside Plaza, Suite 2150
Chicago, Illinois 60606
(312) 233-1550
aficzko@stephanzouras.com

**CERTIFICATE OF SERVICE**

  I, the attorney, hereby certify that on Tuesday, July 30, 2019, I electronically filed the attached with the Clerk of the Court using the ECF system which will send such filing to all attorneys of record.

                */s/ Andrew C. Ficzko*