IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LATRICE SAXON, individually and on behalf of others similarly situated, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No. 1:19-cv-403 Judge Robert M. Dow |
| SOUTHWEST AIRLINES CO., ) ) | |
| Defendant. ) | |

**SOUTHWEST AIRLINES CO.'S REPLY REGARDING
FEDERAL ARBITRATION ACT SECTION 1 THRESHOLD ISSUE**

Plaintiff is not within the Section 1 exemption to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, and must individually arbitrate her wage and hour claims pursuant to her agreement with Southwest. It is well settled that arbitration is favored, and that a party who asserts that she is exempt bears the burden of proof. Plaintiff fails to prove that she is exempt from the FAA. She admits that she is not subject to another form of statutorily-provided arbitration, that she does not physically transport goods in interstate commerce, and that neither she nor the Southwest Ramp Agents she supervises cross state lines when performing their duties. She ignores the federal government's classification of Southwest as a passenger airline, although she admits that her duties all involve passenger planes. While these may be inconvenient facts due to Plaintiff's desired outcome, they are undeniable and mean that Plaintiff must honor her contract with Southwest. Put simply, Plaintiff asks this Court to expand the FAA Section 1 exemption in a manner that is contrary to Supreme Court precedent.

**ARGUMENT**

I. **The FAA Section 1 Exemption Must Be Narrowly Construed**

The FAA "was a response to hostility of American courts to the enforcement of arbitration agreements." *Circuit City Stores v. Adams*, 532 U.S. 105, 111 (2001). To achieve its purpose, "the FAA compels judicial enforcement of a wide range of written arbitration agreements." *Id*. Any party opposing arbitration "bears the burden of establishing why the arbitration provision should not be enforced." *Wallace v. Grubhub Holdings, Inc.*, Case No. 18 C 4538, 2019 WL 1399986, at *2 (N.D. Ill. 2019) (*citing Green Tree Fin. Corp.-Alabama v. Randolph*, 532 U.S. 79, 91-92 (2000)).

FAA Section 1, which provides that the FAA shall not apply "to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce," must be construed narrowly in order to achieve the FAA's purpose of favoring arbitration agreements. *Circuit City*, 532 U.S. at 119 (The statutory context of Section 1 and the FAA's purpose are "considerations" that "compel that the § 1 exclusion provision be afforded a narrow construction"). *Circuit City* instructs courts to read the Section 1 exemption in the context of the "reasonable" assumption that "Congress excluded 'seamen' and 'railroad employees' from the FAA for the simple reason that it did not wish to unsettle established or developing dispute resolution schedules covering specific workers" – those employees who were subject to other federal laws providing them with grievance procedures. *Id*. at 121. With respect to the FAA's purpose, *Circuit City* approvingly noted: "The circuit courts have uniformly reasoned that the strong federal policy in favor of arbitration requires a narrow reading of this section 1 exemption. Thus, those courts have limited the section 1 exemption to seamen, railway workers, and other

workers actually involved in the interstate transportation of goods." *Id*. at n.15 (internal citation omitted).

Here, Plaintiff's response brief identifies no federal law to which she is subject that otherwise provides her with arbitration and grievance rights, admitting that this factor "weighs against a finding" that she is a transportation worker. (Response, p. 14). She further admits that she is not actually transporting goods in interstate commerce (Response, p. 7 – "plaintiff did not fly the plane herself" but claims the "plane is integral to her job responsibilities"). She concedes that neither she nor the Ramp Supervisors under her supervision ever cross state lines in the performance of their duties. (Response, p. 11 – "Ramp Supervisors and/or Ramp Agents do not physically, themselves, personally carry goods and cargo across state lines . . . ."). Plaintiff also notes the obvious: that Southwest uses "passenger planes," not cargo planes—a distinction that weighs heavily against her being exempt from the FAA. (Response, p. 4, the Southwest Ramp Agents supervised by Plaintiff load "passenger luggage" on "passenger planes"). Plaintiff provides no viable justification for this Court to expand the FAA Section 1 exemption.

**II.     Plaintiff Overstates Section 1 Exemption Case Law**

Southwest's opening brief asserted that Plaintiff is not a transportation worker who moves goods across state lines, rendering the FAA Section 1 exemption inapplicable. According to Plaintiff, because the Seventh Circuit has not "explicitly held" that interstate travel is a requirement of the FAA Section 1 exemption, the Court is free to ignore this requirement. (Response, p. 6, n. 1; Response, p. 12). To support this contention, Plaintiff misreads *Wallace v. Grubhub*, 2019 WL 1399986 (N.D. Ill. 2019). In fact, *Wallace* states:

> The Seventh Circuit has not explicitly held that personal interstate travel is a requirement of the <u>exemption</u>, *but the court has stated that § 1 covers "workers engaged in the movement of goods across state lines," and found that truckers*

3

> *primarily engaged in Illinois, but who occasionally transported goods into Missouri, are covered by the § 1 exemption.*

*Wallace*, 2019 WL 1399986, at * 3 (citing *Int'l Bhd. of Teamsters Local Union No. 50 v. Kienstra Precast, LLC,* 702 F.3d 954, 957 (7th Cir. 2012)). Both *Wallace* and *Kienstra Precast* found the employee's actual movement (or lack of movement) of goods across state lines as the key issue in determining whether the Section 1 exemption applied. Plaintiff concedes that she does not transport any goods across state lines, nor do the Ramp Agents she supervises. (Response, pp. 11, 13). Under *Wallace*, which rejected the plaintiffs' assertion that the exemption does not require workers to have physically crossed state lines to deliver goods, Plaintiff is not exempt from the FAA. *See Wallace*, 2019 WL 1399986, at * 3. Plaintiff fails to meaningfully distinguish *Wallace*, as she neither physically transports goods across state lines nor does she drive "the last leg of interstate shipments." *Id*.

Plaintiff largely rests her argument that she is a transportation worker "engaged in the movement of goods in interstate commerce" on the Eight Circuit's decision in *Lenz*. Contrary to her assertion, the so-called *Lenz* factors have not been widely adopted; in fact, no other Circuit has adopted them. More importantly, the actual holding of *Lenz* was that, although a truck driver would be a "transportation worker" exempted by Section 1, the same was not true of an employee who "work[ed] for a transportation company but [was] not a truck driver or transporter of goods." *Lenz v. Yellow Transp., Inc.*, 431 F.3d 348, 352 (8th Cir. 2005). On that point—unlike the application of its factors—*Lenz* is in line with decisions from other Circuits. For example, the Eleventh Circuit has held that an employee who inspected people and goods at an international airport was not a transportation worker "engaged in commerce," *Perez v. Globe Airport Sec. Serv., Inc.*, 253 F.3d 1280, 1284 (11th Cir. 2001), and the D.C. Circuit has held that an employee at

4

Union Station was not engaged in commerce, *Cole v. Burns Int'l Sec. Serv.*, 105 F.3d 1465, 1472 (D.C. Cir. 1997).

Plaintiff's reliance on *Palcko v. Airborne Express, Inc.*, 327 F.3d 588, 590 (3rd Cir. 2004) for the proposition that Plaintiff's supervisory role rendered her "accountable" for transporting goods in commerce is similarly misplaced. This same argument based on *Palcko* was rejected by *Wallace*. As is true here, *Wallace* distinguished *Palcko* on the ground that the *Palcko* supervisor directly managed truck drivers who crossed state and national lines to perform shipping duties. *Wallace*, 2018 WL 1399986, at * 3. That is not analogous to these facts.

Plaintiff also relies on a non-binding decision finding that the employee of a trucking company was "engaged in commerce." *Zamora v. Swift Transp. Corp.*, 2008 WL 2369769 (W.D. Tex. June 3, 2008). That decision is readily distinguishable. The employee in *Zamora* began working for the trucking company as a truck driver and was promoted to manage an entire trucking terminal. *Id.* at *1. In this managerial role, he "had direct responsibility for the transportation of goods in interstate commerce," and his "managerial responsibilities over the trucking terminal had a direct connection to the amount of goods carried in interstate commerce, the speed with which the goods traveled through the channels of interstate commerce, and the efficiency of the instrumentalities of interstate commerce." *Id.* at *7. Not only that, but he also continued to drive trucks for the company. *Id.* Thus, *Zamora* involved a slight variation on the stereotypical Section 1 exemption, with a truck driver being promoted to supervise other truck drivers unquestionably involved in transporting goods. Those facts are nothing like the facts presented here: Southwest is a passenger airline, not a cargo transporter; Saxon was not a pilot transporting goods across state lines; and Saxon was not promoted to a role supervising other pilots, who moved goods in interstate commerce.

Plaintiff also relies on a decision from California state court finding that a truck driver was engaged in interstate commerce even though he never crossed state lines because he worked for a transportation company and 99% of the goods he transported originated in a different state. *Muller v. Roy Miller Freight Lines, LLC*, 34 Cal. App. 5th 1056, 1069 (4th Dist. 2019). This has no analogy here. First, *Muller* recognized that it disagreed with Seventh Circuit and other federal court precedent, which held or suggested that a trucker who never crosses state lines is not a transportation worker under Section 1. *See id.* at 1067. Second, Saxon is not a truck driver or some other direct transporter of goods, and her employer is primarily engaged in the transportation of *people*, not goods.

At bottom, Southwest has cited multiple, analogous cases establishing that employees working for passenger airlines or passenger airline-related companies, who do not themselves move goods across state lines, do not fall within the FAA Section 1 exemption. *See JetBlue Airways Corp.*, 932 N.Y.S.2d 761 (2010), *Borgonia v. G2 Secure Staff, LLC*, 2019 WL 1965927 (N.D. Cal. 2019), *Perez v. Globe Airport Sec. Serv., Inc.*, *supra* at p. 5. These decisions hold, consistent with *Circuit City*, that the section 1 exemption should be narrowly construed such that it is limited to transportation workers who are actually moving goods in interstate commerce. *Borgonia*, 2019 WL 1965927, at *4. Like *Wallace* and *Borgonia* "nothing in [plaintiffs'] jobs involved the interstate deliveries that exist in most cases applying § 1's exclusion." *Id.*[1]

Ultimately, in applying *Circuit City*'s directive to narrowly construe Section 1 such that the exception does not consume the rule, this Court should be mindful of the undisputed facts that

---

[1] Plaintiff's suggestion that Southwest passenger's luggage constitutes goods "in interstate commerce" is absurd. Luggage constitutes personal belongings, and many passengers today carry their luggage onboard. Applying this interpretation, every individual who carried a backpack or purse while commuting from Chicago to Northwest Indiana would be transporting goods in interstate commerce. This reading does not comport with *Circuit City*.

neither Plaintiff nor her reports directly move goods across state lines and Plaintiff's employer (and Plaintiff) are primarily engaged in the movement of passengers. Considering similar facts, *JetBlue*, *Borgonia*, and *Perez* found that the plaintiffs were not exempt from the FAA. This Court should reach the same result to avoid extending the Section 1 exemption to people "too far removed from . . . being a member of an industry that primarily involves the actual, physical movement of goods through interstate commerce." *JetBlue*, 2010 WL 6781684, at *3 (fact that passenger airline moved a small amount of cargo did not convert the airline into a cargo airline).[2]

Recognizing that Southwest's business is the transportation of passengers, not goods, is central to achieving Circuit City's directive to narrowly construe FAA Section 1's "engaged in commerce" language. By excluding industries that transport passengers or provide passenger-related services, *JetBlue*, *Borgonia* and *Perez* prevent the FAA Section 1 exemption from being applied in an overly broad manner to those "too far removed from . . . being a member of an industry that primarily involves the actual, physical movement of goods through interstate commerce." *JetBlue*, 2010 WL 6781684, at *3. For this reason, the *JetBlue* court rejected the contention also made by Saxon here—that a small amount of cargo would convert a passenger airline into one involved in the transportation of goods. *Id*. To find otherwise would vitiate the narrow construction of FAA section 1 required by *Circuit City*.

## CONCLUSION

For the foregoing reasons, and those stated in Southwest's opening brief, the FAA's Section 1 exemption should be deemed inapplicable to Plaintiff, and her arbitration agreement be subject to and enforceable under the Federal Arbitration Act, 9 U.S.C. § 2.

---

[2] Plaintiff repeatedly suggests that Southwest is just "claiming" to be a passenger airline. But it is an indisputable fact of which the court should take judicial notice, established by the U.S. Department of Transportation, that Southwest is a passenger airline—not a cargo airline.

Dated: August 6, 2019　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　SOUTHWEST AIRLINES CO.

　　　　　　　　　　　　　　　　　　　　By: /s/ *Melissa A. Siebert*　　　　　　
　　　　　　　　　　　　　　　　　　　　One of Southwest Airline Co.'s Attorneys

　　　　　　　　　　　　　　　　　　　　Melissa A. Siebert
　　　　　　　　　　　　　　　　　　　　SHOOK, HARDY & BACON LLP
　　　　　　　　　　　　　　　　　　　　111 S. Wacker Drive, Suite 4700
　　　　　　　　　　　　　　　　　　　　Chicago, Illinois 60606
　　　　　　　　　　　　　　　　　　　　Telephone: (312) 704-7700
　　　　　　　　　　　　　　　　　　　　Facsimile: (312) 558-1195
　　　　　　　　　　　　　　　　　　　　masiebert@shb.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that on August 6, 2019, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all Counsel of Record.

                                              /s/ *Melissa A. Siebert*
                                              *One of the Attorneys for Defendant*
                                              *Southwest Airlines Co.*