IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LATRICE SAXON, Individually, and on Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) Case No. 1:19-cv-00403 |
| v. | ) ) ) Honorable Robert M. Dow, Jr. |
| SOUTHWEST AIRLINES CO., | ) ) |
| Defendant. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF SOUTHWEST'S
<u>RENEWED MOTION TO COMPEL ARBITRATION</u>**

Pursuant to the Illinois Uniform Arbitration Act ("IUAA"), 710 ILCS 5/1 *et seq.*, court precedent, and the Parties' binding agreements, Latrice Saxon ("Plaintiff") must be compelled to individually arbitrate her Fair Labor Standards Act ("FLSA") claims against Southwest Airlines Co. ("Southwest"). Southwest filed its Motion to Compel Arbitration on August 3, 2021 (Dkt. 52-53). That motion was subsequently stricken without prejudice pending a final decision by the Supreme Court in *Southwest Airlines Co. v. Saxon*, 142 S. Ct. 1783 (2022), with leave to file *instanter* if necessary (Dkt. 68). The Supreme Court affirmed the Seventh Circuit's opinion. *Saxon*, Slip Op. at 11. Southwest is filing this Renewed Motion to Compel Arbitration to include a discussion of: (i) the Supreme Court's opinion; and (ii) supporting case law decided since Southwest's original motion.

**<u>INTRODUCTION</u>**

On June 6, 2022, the Supreme Court held that Plaintiff was an airplane cargo loader, and extended the FAA Section 1 exemption to her.[1] *Id.* The Supreme Court's opinion says nothing,

---

[1] References to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, have been condensed to "FAA" throughout.

however, about whether Plaintiff's arbitration agreement remains an otherwise enforceable contract under state law. The highest court to address this particular issue, in this case, is the Seventh Circuit, which has expressly stated: "<u>Saxon could still face arbitration under state law</u>." *Saxon v. Southwest Airlines Co.*, 993 F.3d 492, 502 (7th Cir. 2021) (emphasis added).

The ADR Program that Plaintiff signed and agreed to annually for four consecutive years (Ex. A, Vasquez Decl. at ¶¶ 8-12, Exs. 1-4) is indeed enforceable under state law. The executed ADR Program provides for arbitration "to the fullest extent permitted" by state law. *Id.*, Ex. 1, p. 5, at ¶ 4(b). Plaintiff's ADR Program also specifically provides that the state law of her work location (here, Illinois) applies if the FAA is deemed inapplicable. *Id*., p. 1.

The ADR Program's enforceability under state law is not genuinely in dispute because the Court already has determined many of the facts essential to this Renewed Motion. Since at least 2015, Southwest and its supervisory employees have entered into individual arbitration agreements requiring the arbitration of claims related to unpaid wages or other compensation, hours worked, and breaks, including claims under the FLSA. *See* Vasquez Decl. at ¶ 4, Ex. 1, p. 1 at ¶ 2; *Saxon v. Southwest Airlines Co.*, No. 19-cv-0403, 2019 WL 4958247, at *1-2 (N.D. Ill. Oct. 8, 2019). Aside from her argument that she is exempt under the FAA, Plaintiff has long conceded that as a Southwest Ramp Supervisor, she signed an otherwise enforceable agreement to individually arbitrate her FLSA claims. *Saxon*, 2019 WL 4958247, at *2. Specifically, Plaintiff "conceded that she signed the ADR Agreement" and that "ADR would be the proper venue for this suit" if the FAA exemption did not apply. *Id.*

Accordingly, the IUAA, the Seventh Circuit's *Saxon* opinion, applicable case law, and Southwest's admittedly enforceable ADR Program all require Plaintiff to individually arbitrate her FLSA claims.

**ARGUMENT**

When the FAA Section 1 exemption is deemed applicable, the effect is "merely to leave the arbitrability of disputes in the excluded categories as if the [FAA] had never been enacted." *Mason-Dixon Lines, Inc. v. Local Union No. 560*, 443 F.2d 807, 809 (3d Cir. 1971); *accord Volt Info. Scis., Inc. v. Bd. of Tr. of Leland Stanford Junior Univ.*, 489 U.S. 468, 477 (1989) ("The FAA contains no express preemptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration."); *Bernhardt v. Polygraphic Co. of Am.*, 350 U.S. 198, 200-01 (1956) (upholding application of state arbitration law to interpretation of arbitration provision in FAA-exempt contract); *Sherwood v. Marquette Transp. Co., LLC*, 587 F.3d 841, 843 (7th Cir. 2009) ("provisions for alternative dispute resolution may be enforced as contracts under state law, even if the provisions are outside the Federal Arbitration Act's scope").

Thus, regardless of the Supreme Court's opinion regarding the FAA Section 1 exemption's applicability to Plaintiff, her contract with Southwest (the ADR Program), in which she agreed to individually arbitrate any FLSA claims against Southwest, remains enforceable under Illinois law. *See Sherwood*, 587 F.3d at 843; *see also Atwood v. Rent-A-Center East, Inc.*, No. 15-cv-1023, 2016 WL 2766656, at *3 (S.D. Ill. May 13, 2016) (compelling arbitration even though FAA did not apply because plaintiff "did agree to arbitrate this dispute" and arbitration agreement could be enforced "through another vehicle (like state law)"); *see also Rodgers-Rouzier v. Am. Queen Steamboat Operating Co.*, No. 4:20-cv-4-SEB-DML, 2022 WL 823697, at *2 (S.D. Ind. Mar. 18, 2022) (noting that although plaintiff was an exempt "seaman" under the FAA, that "does not preclude a determination that state law may require [plaintiff] and other similarly situated employees to individually arbitrate their claims"). Thus, Southwest now appropriately seeks to compel arbitration of Plaintiff's FLSA claims under the IUAA.

3

A. **Legal Standard.**

Courts applying the IUAA compel arbitration when a "valid agreement exists to arbitrate the dispute" and the "language of the [arbitration] agreement clearly covers the dispute desired to be arbitrated." *Atwood*, 2016 WL 2766656, at *3. A "written agreement to submit any existing controversy to arbitration . . . is valid, enforceable, and irrevocable save upon such grounds as exist for the revocation of any contract." *Id.* at *4 (quoting 710 ILCS 5/1). Any doubts about whether the "dispute falls within the scope of the arbitration clause" must be resolved in favor of arbitration for the arbitrator to decide arbitrability. *Guar. Tr. Life Ins. Co. v. Platinum Supp. Ins., Inc.*, 68 N.E.3d 481, 488 (Ill. App. Ct. 2016). The standard to compel arbitration under the IUAA is met easily here.

B. **Plaintiff can be compelled to arbitrate FLSA claims under the IUAA.**

The IUAA is the state law equivalent of the FAA. *Atwood*, 2016 WL 2766656, at *3. There is "one critical difference" between the IUAA and the FAA: the IUAA "does not contain any exemption for transport workers." *Id.* (emphasis added). As such, the Supreme Court's basis for exempting Plaintiff from the FAA does not exist under Illinois state law, and Plaintiff's ADR Program may be enforced under the IUAA, a result expressly contemplated by the Seventh Circuit in this case. *See Saxon*, 993 F.3d at 502.

The IUAA provides that: "[a] written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable save upon such grounds as exist for the revocation of any contract." 710 ILCS 5/1. The IUAA further provides that "[o]n application of a party showing an agreement [to arbitrate], and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration." 710 ILCS 5/2(a) (emphasis added). Numerous Illinois courts interpreting the IUAA have noted that it "embodies a policy that

4

favors arbitration as a cost-effective method of dispute resolution" and that it "must be deemed part of a contract containing an arbitration clause." *Guar. Tr. Life Ins. Co.*, 68 N.E.3d at 488 (internal citations omitted); *see also Radiant Star Enters. v. Metro. Condo. Assoc.*, 107 N.E.3d 877, 891 (2018).

The Seventh Circuit has considered the "critical difference" (the transport worker exemption) between the FAA and the IUAA and held that "provisions for alternative dispute resolution may be enforced as contracts under state law, <u>even if the provisions are outside the Federal Arbitration Act's scope</u>." *Sherwood*, 587 F.3d at 843 (emphasis added). Thus, Plaintiff cannot reasonably contend she is exempt from arbitration under the IUAA, even though the Supreme Court found that the FAA does not apply to her employment contract.

In fact, in *Sherwood*, the Seventh Circuit rejected this very argument in a nearly identical case involving a seaman deemed exempt from FAA arbitration under Section 1, holding that "when a contract is not covered by the [FAA], states are free to favor, disfavor, or even ban arbitration" and that in such situations, state law will otherwise control. *Id.* Following the Seventh Circuit's explanation in *Sherwood*, the lower court took note of the directive that the IUAA "can and should be reconciled" with the FAA Section 1 exemption, and enforced a seaman's individual arbitration agreement pursuant to the IUAA. *See Sherwood v. Marquette Transp. Co.*, No. 08-cv-849, 2010 WL 99688, at *1 (S.D. Ill. Jan. 7, 2010).[2] Illinois federal courts have followed the Seventh Circuit's directive in *Sherwood* and have enforced individual arbitration agreements under the IUAA, which are otherwise exempt from arbitration under the FAA's Section 1 exemption. *See, e.g.*, *Atwood*,

---

[2] In granting reconsideration and enforcement of the seaman's employment arbitration agreement, the *Sherwood* lower court also noted the Seventh's Circuit's admonishment that if it stood "pat and resolve[d] the suit on the merits, [defendant] will be entitled to contend on appeal from the final decision that the dispute should have been arbitrated instead." *Sherwood*, 2010 WL 99688, at *1 (citing *Sherwood*, 587 F.3d at 845).

5

2016 WL 2766656, at *3; *see also Rodgers-Rouzier*, 2022 WL 823697, at *2 (state law can be used to enforce an arbitration agreement even when FAA Section 1 exemption applies).

Recently, other federal courts have followed suit, enforcing arbitration agreements under state arbitration laws even when those agreements may fall within the FAA's Section 1 exemption. After all, as the Third Circuit aptly noted, "the parties still have an agreement to arbitrate, and if federal law does not govern the arbitrability of their contract, some law must." *Harper v. Amazon.com Servs., Inc.*, 12 F.4th 287, 294 (3d Cir. 2021); *see also de Jesus-Israel v. U-Haul Co. of Va.*, -- F. Supp. 3d --, 2021 WL 5195227, at *4 n.6 (E.D. Va. Nov. 9, 2021) (compelling arbitration because even if FAA exemption applied, "the parties' Arbitration Agreement would nevertheless be enforceable under Virginia law"); *Nelson v. Gobrands, Inc.*, No. 20-cv-5424-JMY, 2021 WL 4262325, at *5 (E.D. Pa. Sept. 20, 2021) (declining to rule on FAA exemption because arbitration agreement was enforceable under state law);[3] *Siperavage v. Uber Techs., Inc.*, No. 20-12265, 2021 WL 2680060, at *3 (D.N.J. June 30, 2021) (collecting cases: "even assuming that Plaintiffs fall within the § 1 exemption (and the FAA does not apply), Plaintiffs' claims are subject to mandatory arbitration under New York arbitration law") (citation omitted); *see also Islam v. Lyft, Inc.*, No. 20-cv-3004, 2021 WL 2651653, at *2 (S.D.N.Y. June 28, 2021) (denying reconsideration after court applied New York law as an alternative basis for compelling arbitration after finding that FAA did not apply); *Dawson v. Uber Techs. Inc.*, No. 3:20-cv-06736, 2021 WL 2273981, at *1 (N.D. Cal. May 7, 2021) (arbitration agreement provided that if FAA does not apply, "law pertaining to arbitration agreements of the state where you reside" does; court finding Georgia law applied); *Butler v. ATS Inc.*, No. 20-cv-1631, 2021 WL 1382378, at *6 (D. Minn.

---

[3] Southwest addressed *Harper* in its reply brief (Dkt. 61). *deJesus-Israel* and *Nelson* were decided after Southwest filed its Motion to Compel (Dkt. 52).

Apr. 13, 2021) (plaintiff may be exempt under FAA Section 1, but Minnesota law separately enforces the arbitration agreement).

The IUAA applies to Plaintiff's claims for several reasons. First, even though it is not necessary for the ADR Program to specify the applicability of Illinois law (*see Atwood*, 2016 WL 2766656, at *3 (agreement can be enforced under state law "even when the contract says that the FAA applies and mentions no other [state] law")), in both 2019 and 2020, Plaintiff acknowledged and agreed to comply with a Southwest ADR Program that provides for arbitration of FLSA claims "to the fullest extent permitted" by state law. Vasquez Decl. at ¶¶ 8-12, Ex. 1, p. 5, at ¶ 4(b); *Id*. at Ex. 4. The ADR Program further states that the state law where Plaintiff works (here, Illinois) will apply if the FAA is deemed inapplicable. *Id.*, Ex. 1, p. 1.

Second, the application of the IUAA is also appropriate under either Illinois federal or state choice of law rules. Under federal choice-of-law rules, the applicable law comes from the state with the "greatest interest in the litigation," and under Illinois state choice-of-law rules, the law of the state of performance of the contract governs. *See Midwest Grain Prods. of Ill., Inc. v. Productization, Inc.*, 228 F.3d 784, 787 (7th Cir. 2000) (applying Illinois choice-of-law rules). Both tests point squarely at Illinois substantive law. Plaintiff, a resident of Illinois, has worked for Southwest at its Chicago Midway location since August 2015; she asserts that her FLSA claims arose in this District and that Southwest's actions occurred in this District. Dkt. 1 at ¶¶ 7-8; *see also Saxon*, 2019 WL 4958247, at *1-2. She does not allege that she has worked at another location or suffered an injury at any other location. *See generally* Dkt. 1. Illinois is clearly the center of this lawsuit.

The low standard for compelling arbitration under the IUAA has been met. *See* 710 ILCS 5/2(a). Plaintiff has "conceded that she signed the ADR Agreement, and that if the [FAA] applies

7

to her, ADR would be the proper venue for this lawsuit." *Saxon*, 2019 WL 4958247, at *2 (citing Dkt. 25-1 at 2). As such, she has already admitted the narrow issue necessary to enforce the ADR Program under IUAA—she has a signed a valid ADR Agreement, which covers the claims she makes here. *See Atwood*, 2016 WL 2766656, at *3; *Guar. Tr. Life Ins. Co.*, 68 N.E.3d at 488. Even without Plaintiff's concession, each of the ADR Programs that Plaintiff has signed and agreed to comply with for the past four years requires arbitration of all employment claims, including those related to wages and other compensation, hours worked, breaks, and claims under the FLSA. *See* Vasquez Decl. at ¶¶ 6-9, Exs. 1-3. Her FLSA claims fall squarely within the scope of the ADR Program. *See* Dkt. 1. As such, Southwest has met the standard to compel arbitration.

**C.  The Parties have a valid and enforceable agreement to arbitrate.**

This Court has already held that Plaintiff's signed ADR Program containing her agreement to individually arbitrate is "valid, irrevocable, and enforceable" under Section 2 of the FAA. *Saxon*, 2019 WL 4958247, *3. Nothing in the Supreme Court's opinion changes this finding, particularly when, as other federal courts have noted, the IUAA "is just as broad as the federal analogue" and that arbitration agreements must be enforced under the IUAA "save upon such grounds as exist for the revocation of any contract." *Atwood*, 2016 WL 2766656, at *3 (quoting 710 ILCS 5/1).

The ADR Program is a valid contract under Illinois law, and Plaintiff has no basis to argue revocation. A contract is enforceable under Illinois law where, as here, there is an offer, acceptance and consideration. *Plymouth Tube Co. v. Pilepro Steel, LP*, No. 15 C 10353, 2017 WL 4707454, at *5 (N.D. Ill. Oct. 19, 2017) (citation omitted); *see also Gore v. Alltel Commc'ns, LLC*, 666 F.3d

1027, 1032 (7th Cir. 2012) ("to determine whether a contract's arbitration clause applies to a given dispute, federal courts apply state-law principles of contract formation.").[4]

On an annual basis beginning in 2017 and continuing in 2018, 2019 and 2020, Southwest presented the offer of the ADR Program terms to Plaintiff for her review, providing clear and repeated online announcements and links to the ADR Program terms. Vasquez Decl. at ¶¶ 6-7, 10, Ex. 4. Southwest would further restrict Plaintiff's access to Southwest's intranet, SWALife, if she did not acknowledge having reviewed the ADR Program. *Id*. at ¶ 6. The ADR Program itself covers the essential terms of the agreement in detail, specifying the applicable rules governing the arbitration process, the claims covered, and the rights retained by the parties. *Id*. at ¶ 9, Exs. 1-3. The ADR Program also has been continuously available to Plaintiff to review and print. *Id*. at ¶ 14.

Plaintiff admits that she signed the ADR Program, which was her acceptance of the program. *Saxon*, 2019 WL 4958247, at *2. Southwest's records reflect as much, establishing that Plaintiff voluntarily reviewed and accepted the ADR Program terms electronically in 2017, 2018, 2019, and 2020. Vasquez Decl. at ¶¶ 8-10, Ex. 4. There has never been a time that Plaintiff refused to accept the terms of the ADR Program. Indeed, Plaintiff has continued to accept the terms of the ADR Program even after filing this lawsuit. *Id*. at ¶ 10, Ex. 4. Plaintiff's voluntary and continued acceptance of the ADR Program via electronic signature constitutes valid acceptance under Illinois law. *Keck & Assoc., P.C. v. Vasey*, 834 N.E.2d 486, 487 (Ill. App. Ct. 2005); *see also* 5 ILCS 70/1.15 (recognizing electronic signatures as "the written signature of any person").

---

[4] State law also governs the interpretation of "generally applicable contract defenses, such as fraud, duress, or unconscionability." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745-46 (2011). The party seeking to avoid arbitration bears the burden of establishing these "generally applicable contract defenses." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

9

There was also consideration for Southwest's ADR Program. Under Illinois law, Plaintiff's continued employment by Southwest was sufficient consideration to form a valid, enforceable agreement. *See Melena v. Anheuser-Busch, Inc.*, 847 N.E.2d 99, 109 (Ill. 2006). Additionally, Southwest's and Plaintiff's mutual promises to resolve any respective claims against each other through arbitration constitute additional consideration for the ADR Program. *See* Vasquez Decl. at ¶¶ 4, 6, 13, Exs. 1-3; *see also Gen. Motors Acceptance Corp. v. Johnson*, 822 N.E.2d 30, 37 (Ill. App. Ct. 2004) (bilateral agreement to arbitrate is sufficient consideration for arbitration agreement).

All of the foregoing contractual requirements of offer, acceptance, and consideration have been met, such that the Court should compel arbitration pursuant to the IUAA. *See Atwood*, 2016 WL 2766656, at *3 ("When a party moves to compel arbitration, the main issue is whether a <u>valid</u> agreement exists to arbitrate the dispute—if it does and the language of the agreement clearly covers the dispute desired to be arbitrated, the court should compel arbitration.") (citation omitted, emphasis added).

Moreover, the IUAA provides that "[a]ny action . . . subject to arbitration shall be stayed if an order for arbitration or an application therefore has been made under this Section . . . ." 710 ILCS 5/2(d). Southwest thus respectfully requests that the Court stay this litigation, while compelling Plaintiff to arbitrate her claims pursuant to the IUAA and in accordance with the ADR Program.

## **CONCLUSION**

WHEREFORE, for the reasons set forth in this Renewed Motion to Compel Arbitration and accompanying exhibits, as well as for the reasons set forth in Southwest's accompanying Renewed Motion to Strike Class allegations, Southwest respectfully requests that the Court enter

an Order compelling individual arbitration, and staying this litigation pending arbitration, consistent with the terms of the ADR Program.

Dated: July 6, 2022

Respectfully submitted,

SOUTHWEST AIRLINES CO.

By: /s/ *Melissa A. Siebert*
    One of Its Attorneys

Melissa A. Siebert (masiebert@shb.com)
Kathleen M. Ryan (kxryan@shb.com)
SHOOK, HARDY & BACON LLP
111 S. Wacker Drive, Suite 4700
Chicago, Illinois 60606
Telephone: (312) 704-7700
Facsimile: (312) 558-1195

**CERTIFICATE OF SERVICE**

I hereby certify that on July 6, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all Counsel of Record.

/s/ *Melissa A. Siebert*