**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LATRICE SAXON, individually and on behalf of all others similarly situated, | |
| *Plaintiff*, | |
| | Case No. 1:19-cv-00403 |
| v. | |
| | Hon. Judge Robert M. Dow, Jr. |
| SOUTHWEST AIRLINES CO., | |
| *Defendant*. | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S
<u>RENEWED MOTION TO COMPEL ARBITRATION</u>**

## TABLE OF CONTENTS

I.    PROCEDURAL HISTORY ................................................................................2

II.   ARGUMENT ..............................................................................................4

      A.    Defendant's Motion is Precluded Under Rule 12(g)(2) and Rule 12(h)(1)(A).
            ................................................................................................4

      B.    Defendant's Third Motion is Otherwise Barred by the Waiver Doctrine. .....9

      C.    The Terms of Defendant's ADR Agreements Are Substantive
            Unconscionable. ...........................................................................10

            1.    The ADR Agreement is Unconscionable and Should Not Be Severed.
                  ....................................................................................14

      D.    The Agreements to Arbitrate are Void as a Matter of Public Policy. ...........15

III.  CONCLUSION ..........................................................................................18

i

## TABLE OF AUTHORITIES

**Cases**                                                                                   **Page(s)**

*766347 Ontario Ltd. v. Zurich Capital Markets, Inc.*,
  274 F. Supp. 2d 926 (N.D. Ill. 2003) ........................................................................... 5

*About U.S. Real Est., Inc. v. Burnley*,
  2015 WL 3397025 (N.D. Ill. May 26, 2015) ............................................................... 6

*Atwood v. Rent-A-Center East, Inc*.,
  2016 WL 2766656 (S.D. Ill. May 13, 2016)...................................................... 7, 8, 17

*Barrentine v. Arkansas-Best Freight Sys., Inc.*,
  450 U.S. 728 (1981)..................................................................................................... 15

*Baumann v. Finish Line, Inc.*,
  421 F. App'x 632 (7th Cir. 2011) ............................................................................... 13

*Butler v. ATS Inc.*,
  2021 WL 1382378 (D. Minn. Apr. 13, 2021) .............................................................. 9

*Cabintree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*,
  50 F.3d 388 (7th Cir. 1995) ........................................................................................ 10

*Championsworld, LLC v. United States Soccer Fed., Inc.*,
  890 F. Supp. 2d 912 (N.D. Ill. 2012) ......................................................................... 11

*Dawson v. Uber Technologies Inc.*,
  2021 WL 2273981 (N.D. Cal. May 7, 2021) ................................................................ 8

*De Jesus-Israel v. U-Haul Co. of Va*.,
  571 F. Supp. 3d 490 (E.D. Va. 2021) ........................................................................... 8

*Ennenga v. Starns*,
  677 F.3d 766 (7th Cir. 2012) ................................................................................... 4, 5

*Faulkenberg v. CB Tax Franchise Systems, LP*,
  637 F.3d 801 (7th Cir. 2011) ....................................................................................... 3

*Frank's Maint. & Eng'g, Inc. v. C.A. Roberts Co.*,
  86 Ill. App. 3d 980 (1st Dist. 1980) .......................................................................... 11

*Gibson v. Neighborhood Health Clinics*,
  121 F.3d 1126 (7th Cir. 1997) ................................................................................... 14

*Green Tree Fin. Corp.-Alabama v. Randolph,*
531 U.S. 79 (2000) ......................................................................................... 13

*Halim v. Great Gatsby's Auction Gallery, Inc.,*
516 F.3d 557 (7th Cir. 2008) ......................................................................... 10

*Hall Street Associates, L.L.C. v. Mattel, Inc.,*
552 U.S. 576 (2008) ..................................................................................... 7, 8

*Harper v. Amazon.com Servs., Inc.,*
12 F.4th 287 (3d Cir. 2021) ............................................................................. 8

*Herrington v. Waterstone Mortg. Corp.,*
2012 WL 1242318 (W.D. Wisc. Mar. 16, 2012) ........................................... 14

*Islam v. Lyft, Inc.,*
2021 WL 2651653 (S.D.N.Y. June 28, 2021) ................................................. 9

*James v. McDonald Corp.,*
417 F. 3d 672 (7th Cir. 2005) ....................................................................... 14

*Johnson v. United Airlines, Inc.,*
2013 WL 323404 (N.D. Ill. Jan. 25, 2013) ..................................................... 5

*Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prod., Inc.,*
660 F.3d 988 (7th Cir. 2011) .......................................................................... 9

*Killian v. Concert Health Plan,*
2008 WL 2561218 (N.D. Ill. June 24, 2008) .................................................. 5

*Kinkel v. Cingular Wireless LLC,*
223 Ill. 2d 1 (2006) ....................................................................................... 11

*Koveleskie v. SBC Capital Markets, Inc.,*
167 F.3d 361 (7th Cir. 1999) ......................................................................... 12

*Kramer v. Am. Bank & Tr. Co., N.A.,*
2014 WL 3638852 (N.D. Ill. July 23, 2014) ................................................... 6

*LAS, Inc. v. Mini-Tankers, USA, Inc.,*
342 Ill. App. 3d 997 (5th Dist. 2003) .............................................................. 9

*Livingston v. Associates Fin., Inc.,*
339 F.3d 553 (7th Cir. 2003) ......................................................................... 13

iii

*Nelson v. Gobrands, Inc.*,
  2021 WL 42623 (E.D. Pa. Sept. 20, 2021) ................................................................ 8

*Oliveira v. New Prime, Inc.*,
  424 F. Supp. 3d 206 (D. Mass. 2019) ..................................................................... 10

*Omni Tech Corp. v. MPC Solutions Sales, LLC*,
  432 F.3d 797 (7th Cir. 2005) .............................................................................. 7, 8

*Parilla v. IAP*,
  368 F.3d 269 (3rd Cir. 2004) ............................................................................ 14, 15

*Razor v. Hyundai Motor America*,
  222 Ill. 2d 75 (2006) ...................................................................................... 11

*Realtime Data LLC v. Carbonite, Inc.*,
  2017 WL 4693970 (E.D. Tex. July 11, 2017) ............................................................ 5

*Rodgers-Rouzier v. Am. Queen Steamboat Co.*,
  2022 WL 823697 (S.D. Ind. Mar. 18, 2022) ............................................................ 8

*Saxon v. Sw. Airlines Co.*,
  2019 WL 4958247 (N.D. Ill. Oct. 8, 2019) ........................................................ 2, 4, 6

*Saxon v. Sw. Airlines Co.*,
  993 F.3d 492 (7th Cir. 2021) ............................................................................... 4

*Schroeder Murchie Laya Associates, Ltd. v. 1000 W. Lofts, LLC*,
  319 Ill. App. 3d 1089 (1st Dist. 2001) .................................................................... 9

*Shebley v. United Contl. Holdings, Inc.*,
  2020 WL 2836796 (N.D. Ill. May 31, 2020) ............................................................ 6

*Sherwood v. Marquette Transp. Co., LLC*,
  587 F.3d 841 (7th Cir. 2009) ........................................................................... 7, 17

*Simmons v. Catton*,
  2009 WL 4923063 (C.D. Ill. Dec. 8, 2009) ........................................................... 5, 6

*Siperavage v. Uber Techs., Inc.*,
  2021 WL 2680060 (D.N.J. June 30, 2021) ............................................................... 8

*Smith v. GC Servs. Ltd. P-ship*,
  907 F.3d 495 (7th Cir. 2018) ............................................................................. 10

iv

*Sw. Airlines Co. v. Saxon*,
   142 S. Ct. 1783 (2022) .................................................................................. 3, 6

**Statutes**

Age Discrimination in Employment Act,
   29 U.S.C. § 621 .................................................................................................. 17

Fair Labor Standards Act,
   29 U.S.C. §§ 201 *et seq* .................................................................................... 2

Federal Arbitration Act,
   9 U.S.C. § 1 *et seq.* ............................................................................................ 1

Illinois Uniform Arbitration Act,
   710 ILCS 5/1 *et seq* ...................................................................................... 1, 3

Workplace Transparency Act,
   820 ILCS 96/1-1, *et seq.* ........................................................................ 1, 16, 17

**Rules**

Fed. R. Civ. P. 12(g) ........................................................................................ 4, 6
Fed. R. Civ. P. 12(h) ........................................................................................ 5, 6
Fed. R. Civ. P. 30 ............................................................................................... 12
Fed. R. Civ. P. 33 ............................................................................................... 12
Fed. R. Civ. P. 34 ............................................................................................... 12
Ill. S. Ct. R. 206 ................................................................................................. 12
Ill. S. Ct. R. 213 ................................................................................................. 12
Ill. S. Ct. R. 214 ................................................................................................. 12

Having failed its all-out attempt to compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, ("FAA"), which included an unsuccessful trip to the United States Supreme Court, Defendant Southwest Airlines Co. ("SWA" or "Defendant") attempts a third bite of the apple, arguing that Plaintiff Latrice Saxon ("Saxon" or "Plaintiff") is bound to arbitrate under the Illinois Uniform Arbitration Act ("IUAA"), 710 ILCS 5/1 *et seq.* Not only did SWA fail to ever raise its IUAA argument for more than two and a half years,[1] but it unequivocally stated in its first motion to dismiss and reaffirmed at a subsequent court hearing that it was moving *exclusively* under the "FAA" and Rule 12(b)(3). *See* Dkt. Nos. 13, 14 at 1; *see also* Dkt. No. 25-1, June 7, 2019, Transcript of Proceedings, at 3:12-18, 5:21-6:9, 6:18-20, 8:21-23. Defendant's belated attempt to present an entirely new and different basis for compelling arbitration, nearly two and a half years after it filed its original Rule 12(b)(3) motion to dismiss for improper venue, is absolutely not permitted. Unquestionably, Defendant waived and is precluded from asserting a new basis for dismissal under Rule 12(g)(2), Rule 12(h)(1)(A), and the waiver doctrine.

The Court's analysis should end there. However, even if the Court were to find that Defendant did not waive the argument that it may compel arbitration under state law, which it clearly did, courts routinely refuse to enforce arbitration agreements, like SWA's, that are procedurally or substantively unconscionable, or both.

Finally, recent amendments to the IUAA through the Workplace Transparency Act ("WTA"), 820 ILCS 96/1-1, *et seq.*, render the operative ADR Agreement void as a matter of public policy. The ADR Agreements purport to require Plaintiff to arbitrate all claims related to

---

[1] Defendant filed a second motion to compel arbitration on August 3, 2021, raising the state law defense for the very first time, which was fully briefed. *See* Dkt. No. 52. On January 13, 2022, this Court struck the motion, with leave to file instanter, in light of the then-pending proceedings before the Supreme Court. *See* Dkt. No. 68.

1

her employment with Defendant, inclusive of those defined as unlawful employment practices under the WTA. As the language requiring arbitration of unlawful employment practices is inextricably intertwined with Plaintiff's agreement to arbitrate claims arising from her employment with SWA, the agreement to arbitrate under the ADR Agreements is void and unenforceable under the IUAA and WTA. Accordingly, SWA may not use its ADR Agreements as a basis to bind Plaintiff to arbitration.

## I. <u>PROCEDURAL HISTORY</u>

Plaintiff filed her Collective Action Complaint on January 18, 2019, alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* (the "FLSA"), resulting from Defendant's unlawful companywide policies and practices regarding its failure to pay overtime compensation to its ramp supervisors for all time worked over 40 hours per week. Specifically, Plaintiff alleges that Defendant maintained a corporate policy and practice requiring ramp supervisors to work before the start of their scheduled shifts without compensation and through their meal breaks, despite Defendant automatically deducting a 30-minute unpaid meal break each day, in violation of the FLSA. *See* Dkt. No. 1 at ¶¶ 1-4.

On April 8, 2019, Defendant filed a Motion to Dismiss or Stay in Favor of Arbitration <u>exclusively</u> under the <u>FAA</u> and <u>Rule 12(b)(3)</u> ("First Motion"). *See* Dkt. No. 13; *see also Saxon v. Sw. Airlines Co.*, 2019 WL 4958247, at *2 (N.D. Ill. Oct. 8, 2019). At a June 7, 2019, hearing to address Defendant's First Motion, SWA unambiguously advised the Court that it was seeking relief under Rule 12(b)(3), a venue motion, based solely on the FAA. *See* Dkt. No. 25-1, at 3:12-18, 5:21-6:9, 6:18-20, 8:21-23. The Court directed the Parties to conduct limited discovery and file supplemental briefing on the "sole issue" of the applicability of Section 1 of the FAA. *See* Dkt. No. 26. On October 8, 2019, after the Parties completed the limited FAA discovery and submitted

supplemental briefing pertaining to Section 1 of the FAA, the Court granted Defendant's First Motion and terminated the case in favor of arbitration. *See* Dkt. No. 31. Following the decision, Plaintiff timely appealed and on March 31, 2021, and the Seventh Circuit reversed and remanded, holding that Saxon and other ramp supervisors are transportation workers whose contracts of employment are exempted from the FAA. *See* Dkt. No. 33; App. Dkt. Nos. 60, 61.

On August 3, 2021, Defendant filed a second Motion to Compel Arbitration, arguing for the first time, notwithstanding its availability and actual knowledge of the defense, that Plaintiff's claims were subject to the IUAA, 710 ILCS 5/1 *et seq.* ("Second Motion"). *See* Dkt. No. 52. Three weeks later, SWA filed a Petition for Writ of Certiorari, which the Supreme Court granted on December 10, 2021. On January 13, 2022, in light of the pending proceedings before the Supreme Court, this Court struck, with leave to refile instanter, Defendant's Second Motion (along with Plaintiff's then-pending motion for equitable tolling and Defendant's then-pending motion to strike collective action allegations), pending the Supreme Court's decision. *See* Dkt. No. 68. On June 6, 2022, the Supreme Court affirmed the judgment of the Seventh Circuit and held that Plaintiff and all other ramp supervisors whose duty is to load and unload interstate cargo are engaged in commerce and are therefore transportation workers whose contracts of employment are exempted from the FAA. *Sw. Airlines Co. v. Saxon*, 142 S. Ct. 1783 (2022).

Finally, on July 6, 2022, nearly three and a half years after the lawsuit was filed, Defendant filed its Renewed Motion to Compel Arbitration ("Third Motion") (Dkt. No. 70)[2], as well as a

---

[2] In its First Motion, Defendant clearly represented that it was brought under Fed. R. Civ. P. 12(b)(3), which governs defenses premised upon improper venue. *See* Dkt. Nos. 13, 14. But in a transparent effort to cover the fact that it was improperly filing consecutive Rule 12(b)(3) motions in violation of Fed. R. Civ. P. 12(g)(2) and 12(h)(1)(A), Defendant failed to cite the procedural rule under which it was seeking relief in its Second and Third Motions, both of which were challenges to venue under Rule 12(b)(3). *See Faulkenberg v. CB Tax Franchise Systems, LP*, 637 F.3d 801, 808 (7th Cir. 2011) (finding that a Rule 12(b)(3) motion to dismiss is the proper procedural vehicle by which to compel arbitration); Dkt. No. 25-

3

renewed motion to strike collective action allegations (Dkt. No. 72).

## II.    ARGUMENT

### A.    Defendant's Motion is Precluded Under Rule 12(g)(2) and Rule 12(h)(1)(A).

Defendant's First Motion was premised solely on its argument that, "the FAA mandates dismissal or a stay of Saxon's FLSA lawsuit … ." *See* Dkt. No. 14 at 4; *see also* Dkt. No. 25-1, at 5:21-24 (Counsel for SWA conceding the First Motion was teed up as a "12(b)(3) motion, which is a venue motion, which this Court, and the Seventh Circuit, has held is the proper thing to do when an arbitration is involved"), and 6:18-20 (Counsel for SWA conceding that the only threshold issue for the Court to decide is whether Section 1 of the FAA applies). At no time did Defendant ever suggest that if the FAA did not apply, state law could fill the gap.[3] Under the plain and unambiguous text of Fed. R. Civ. P. 12(g)(2) and 12(h)(1)(A), this omission has consequences; namely, Defendant has waived its recently-unveiled argument.

Rules 12(g)(2) and 12(h)(1)(A) expressly require parties to consolidate dismissal arguments into a <u>single motion</u> and thus preclude Defendant from raising its new argument now. *Ennenga v. Starns*, 677 F.3d 766, 772 (7th Cir. 2012). Specifically, "a party that makes a motion under [Rule 12] must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). The Rule

---

1, at 5:19-6:13 (Counsel for SWA and the Court acknowledging that a 12(b)(3) motion is the proper procedural mechanism to compel arbitration in the Seventh Circuit and this District); *see also Saxon*, 2019 WL 4958247 at *2.

[3] Citing *dicta* from the Seventh Circuit opinion in which it stated that "Saxon could still face arbitration under state law," SWA suggests the issue has already been decided in its favor. *See* Dkt. No. 71 at 2, 4 (citing *Saxon v. Sw. Airlines Co.*, 993 F.3d 492, 502 (7th Cir. 2021)). Not so. The Court simply made a general observation; it obviously did not peruse the trial court pleadings to determine whether SWA had properly preserved its argument, much less make any conclusive determination on the issue. *Id.*

4

carves out exceptions for subsequent motions to dismiss made under Rule 12(b)(1) and (6), but motions under Rule 12(b)(3) are not included. The policy behind Rule 12(g) is to prevent a defendant from moving to dismiss on one ground, losing, and then moving for dismissal on other grounds, which is exactly what SWA is attempting here. *Ennenga*, 677 F.3d at 773. Indeed, courts in this circuit regularly hold that a party that fails to raise an available defense under Rule 12(b)(3) in a motion to dismiss is estopped from raising that defense in a subsequent motion. *See Johnson v. United Airlines, Inc.*, 2013 WL 323404, at *2 (N.D. Ill. Jan. 25, 2013) ("Because the venue objection was available when [defendant] filed its first Rule 12 motion and is not excepted by Rules 12(h)(2) or (3), Rule 12(g)(2) prohibit[s] [defendant] from filing a second Rule 12 motion seeking dismissal for improper venue under Rule 12(b)(3).") (collecting cases). All defenses and motions available to a defendant under Rule 12(b)(2)-(5) must be raised at one time; otherwise, any arguments not raised are waived. Fed. R. Civ. P. 12(h)(1)(A); *see also Killian v. Concert Health Plan*, 2008 WL 2561218, at *1 (N.D. Ill. June 24, 2008) ("Rule 12(g) requires a defendant to raise all defenses under 12(b)(2)-(5) at one time, under penalty of waiver."); *766347 Ontario Ltd. v. Zurich Capital Markets, Inc.*, 274 F. Supp. 2d 926, 930 (N.D. Ill. 2003) (same); *see also Realtime Data LLC v. Carbonite, Inc.*, 2017 WL 4693970, at *1 (E.D. Tex. July 11, 2017) ("A party waives any defenses listed in Rule 12(b)(2)-(5) by … omitting it from a motion in the circumstances described in Rule 12(g)(2).").

Rules 12(g)(2) and 12(h)(1)(A) exist to prevent "piecemeal consideration of a case" and to avoid allowing defendants "two bites at the apple" when they fail to raise all relevant arguments at the appropriate time. *Simmons v. Catton*, 2009 WL 4923063, at *2 (C.D. Ill. Dec. 8, 2009) (quoting 1966 Amendment Comments to Rule 12(g)). Importantly, when a defendant raises successive arguments following a Rule 12(b)(2)-(5) motion, the issue before the court is not the

merits of any newly raised argument, but whether the defendant could have raised it in the original motion. *Id*. Importantly,

> Rules 12(g)(2) and 12(h)(1)(A) provide in combination that a party waives any Rule 12(b)(3) defense for "improper venue" by "omitting it from a motion" under Rule 12, so long as the venue defense "was available to the party" when the "earlier motion" was filed. Since the defendant … already filed a Rule 12 motion, and their current venue defense was then available to them, they waived that defense by omitting it from their "earlier motion."

*About U.S. Real Est., Inc. v. Burnley*, 2015 WL 3397025, at *3 (N.D. Ill. May 26, 2015) (citing Fed. R. Civ. P. 12(g)(2) and 12(h)(1)(A)); *see also Shebley v. United Contl. Holdings, Inc.*, 2020 WL 2836796, at *4 (N.D. Ill. May 31, 2020) (holding that a defendant who fails to raise an argument in their original Rule 12 motion, which was "equally available to them" at that time, is "forbid[den]" from raising the argument).

Defendant unquestionably premised its First Motion specifically and exclusively under the FAA and Rule 12(b)(3). *See* Dkt. Nos. 13, 14 at 1; Dkt. No. 25-1 at 2:22-3:2, 3:12-18, 5:21-6:2, 6:7-9, 6:18-20, 8:21-23; *Saxon*, 2019 WL 4958247. SWA discussed the FAA at length and whether it applied to the Plaintiff, who the Seventh Circuit and Supreme Court ultimately held was a transportation worker exempt from coverage. *See* Dkt. No. 14; App. Dkt. No. 60; *Sw. Airlines Co.*, 142 S. Ct. 1783. Defendant made no mention whatsoever of the IUAA or any state law basis for compelling Plaintiff to arbitrate despite every opportunity to do so. *See* Dkt. No. 14. Whatever its merits, the argument was unmistakably available and could have been raised by Defendant, but it chose not to. In making a successive Rule 12(b)(3) motion based on a previously omitted state law argument, Defendant is merely attempting to remedy mistakes seen in its failed First Motion— exactly what Rule 12 prohibits. *See Kramer v. Am. Bank & Tr. Co.*, *N.A.*, 2014 WL 3638852, at *3 (N.D. Ill. July 23, 2014) (finding that a defendant cannot use a successive motion based on a new argument after its first motion to dismiss fails).

6

SWA dedicated itself to litigating a threshold issue regarding arbitration under the FAA, all while abandoning the argument that Plaintiff could be compelled to arbitration under state law, when it filed its First Motion on April 8, 2019. Defendant deliberately chose not to assert an argument under the IUAA until after the Seventh Circuit issued a favorable decision for Plaintiff on the only argument it brought before the Court. Defendant cannot now assert an argument under the IUAA to attempt to undo its earlier tactical decision. Accordingly, Defendant has waived its IUAA argument, and its Third Motion must be denied under Rule 12(g)(2) and Rule 12(h)(1)(A).

Defendant's reliance on *Atwood v. Rent-A-Center East, Inc*., 2016 WL 2766656 (S.D. Ill. May 13, 2016), and *Sherwood v. Marquette Transp. Co., LLC,* 587 F.3d 841 (7th Cir. 2009), is misplaced. While the courts ruled in favor of arbitration under the IUAA, the facts in both cases are inapposite.

Although the plaintiff in *Sherwood* was a party to an arbitration agreement governed by the FAA and also found to be exempt as a transportation worker, this is where the similarities of the cases end. 587 F.3d at 842. The defendant in *Sherwood*, unlike here, did not rely on the FAA to compel arbitration. Rather, the defendant brought its motion under Illinois law. *Id*. at 843. The state law provision, in fact, was the sole basis for the defendant's argument. *Id*. at 842-43. Unlike SWA here, the defendant in *Sherwood* did not waive its state law argument by timely moving for relief on a state law basis in the first instance. *Id.* at 843.[4]

_____

[4] In reaching its decision, the *Sherwood* court relied on *Omni Tech Corp. v. MPC Solutions Sales, LLC,* 432 F.3d 797 (7th Cir. 2005) and *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008). However, neither of these cases offer much support for SWA's position here. In *Omni*, the district court denied a motion to stay pending resolution of the parties' dispute by accountants, rather than an arbitrator, as provided by the contractual terms the parties agreed to. *Omni*, 432 F.3d at 797-98. The Seventh Circuit did not decide whether federal or state law governs the enforcement of the parties' dispute-resolution agreement. *Id.* at 800. Rather, the Court disagreed with the district court's finding that because accountants, and not arbitrators, were tasked with resolving the parties' disputes, it was free to "ignore any form of alternative dispute resolution other than 'arbitration.'" *Id.* at 798. The Seventh Circuit found the agreement

*Atwood* is similarly distinguishable. In *Atwood*, unlike here, the defendants moved to compel arbitration under the FAA, *or alternatively*, under the IUAA. *Atwood*, 2016 WL 2766656 at *1. After declaring Atwood, a transportation worker, exempt from arbitration under the FAA, the district court proceeded with the defendant's *timely* alternative argument determining whether the arbitration agreement could be enforced under state law. *Id.* at *3. Despite being given the opportunity, the plaintiff failed to object to the defendants' alternative means to compel under Illinois law. *Id*. Therefore, the district court held, "[t]here being no reason advanced by Atwood against arbitration under Illinois law, the Court will compel the parties to arbitrate Atwood's instant claims under the Illinois Uniform Arbitration Act." *Id.* at *4.[5]

---

valid under Wisconsin law and remanded with instructions to stay the proceedings while an accountant resolved the dispute as contemplated by the parties. *Id*. at 801. In *Hall Street*, the parties agreed to enter into an arbitration agreement during the course of litigation, which was adopted by the trial court as an order. *Hall Street Associates, L.L.C.,* 552 U.S. at 57. However, the trial court refused to enforce the arbitration award that was ultimately rendered. The Supreme Court was tasked with deciding the issue of "whether statutory grounds for prompt vacatur and modification may be supplemented by contract." *Id*. at 578. The Court held that, as provided for in the FAA either for vacating or modifying, arbitration awards establish the exclusive means for vacatur and modification and "the statutory grounds are exclusive." *Id.* at 578.

[5] Defendant also cites to other decisions in which arbitration agreements were enforced under state law when the FAA's Section 1 exemption applied; however, in each case, the party moving to compel arbitration, unlike here, **raised the state law alternative at the same time it moved to compel arbitration under the FAA**. *See* Dkt. No. 71 at 6; *Harper v. Amazon.com Servs., Inc.,* 12 F.4th 287, 295 (3d Cir. 2021) (remanding to the trial court to consider arbitration under Defendant's alternative state law grounds, that was not previously considered); *De Jesus-Israel v. U-Haul Co. of Va*., 571 F. Supp. 3d 490, 498 n.6 (E.D. Va. 2021) (granting motion to compel arbitration against a pro se plaintiff who failed to establish that her job responsibilities fell within the FAA exemption for transportation workers, and noting in a footnote, that the agreement may also be enforceable under Virginia law without deciding the issue); *Nelson v. Gobrands, Inc.,* 2021 WL 42623, at *5 (E.D. Pa. Sept. 20, 2021) (compelling arbitration pursuant to state law where defendant moved to compel arbitration under the FAA and, alternatively, under Pennsylvania and Illinois law); *Rodgers-Rouzier v. Am. Queen Steamboat Co.*, 2022 WL 823697, at *3, n.2 (S.D. Ind. Mar. 18, 2022) (denying plaintiff's motion for step one notice under the FLSA and directing defendant to provide evidence for each opt-in it seeks to exclude with sufficient evidence to determine the validity of the arbitration agreements compelling arbitration under state law that was properly before the court); *Siperavage v. Uber Techs., Inc.,* 2021 WL 2680060, at *3 (D.N.J. June 30, 2021) (compelling arbitration under state law where defendant moved to compel arbitration under the FAA and, alternatively, under New Jersey law); *Dawson v. Uber Technologies Inc.*, 2021 WL 2273981, at *2-4 (N.D. Cal. May 7, 2021) (compelling arbitration

**B.      Defendant's Third Motion is Otherwise Barred by the Waiver Doctrine.**

Saxon filed her lawsuit 43 months ago. Defendant moved to compel arbitration exclusively under the FAA and took its argument to the United States Supreme Court, thereby consuming countless hours of judicial and attorney time along with substantial litigation fees and expenses. Defendant steadfastly advanced its theory without ever mentioning an alternative basis to compel Plaintiff to arbitration; that is, until after the Seventh Circuit issued an unfavorable ruling over two years after the Action was filed. Defendant clearly abandoned its right to arbitrate under state law and its Third Motion should be barred by the waiver doctrine.

Under Illinois law, "in determining whether a party has waived its contractual right to arbitrate, the crucial inquiry is whether the party has acted inconsistently with its right to arbitrate." *Schroeder Murchie Laya Associates, Ltd. v. 1000 W. Lofts, LLC*, 319 Ill. App. 3d 1089, 1098 (1st Dist. 2001). "Waiver will be found when the party seeking arbitration substantially invokes the judicial process and substantially participates in litigation to a point inconsistent with an intent to arbitrate, to the detriment or prejudice of the other party." *LAS, Inc. v. Mini-Tankers, USA, Inc.*, 342 Ill. App. 3d 997, 1002 (5th Dist. 2003) (collecting cases). "Despite the federal policy favoring arbitration, a contractual right to arbitration can be waived." *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prod., Inc.,* 660 F.3d 988, 994 (7th Cir. 2011). Of all the factors to be considered in determining waiver, diligence or the lack thereof, should weigh heavily in the decision by considering whether the moving party did "all it could reasonably have been expected

---

under state law where defendant moved to compel arbitration under the FAA, or alternatively, under the Georgia Arbitration Code); *Butler v. ATS Inc.,* 2021 WL 1382378, at *3, 5-6 (D. Minn. Apr. 13, 2021) (compelling arbitration under state law where the parties agreed the FAA did not apply, and the motion to compel arbitration was brought under state law only); *Islam v. Lyft, Inc.*, 2021 WL 2651653, at *1 (S.D.N.Y. June 28. 2021) (compelling arbitration under state law where the court held plaintiff was exempt from the FAA, evaluating the application of New York law contemporaneously with the FAA).

to do to make the earliest feasible determination of whether to proceed judicially or by arbitration?" *Smith v. GC Servs. Ltd. P-ship,* 907 F.3d 495, 499 (7th Cir. 2018) (quoting *Cabintree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995)); *see also Halim v. Great Gatsby's Auction Gallery, Inc.,* 516 F.3d 557, 562 (7th Cir. 2008).

Before the onset of this litigation, SWA unquestionably knew its rights under the arbitration agreement it unilaterally drafted, including its right to invoke arbitration under the IUAA. Defendant's failure to raise the IUAA or any other state law basis to compel arbitration until losing at the Seventh Circuit, along with its dogged pursuit of its FAA-based argument to the Supreme Court, is conduct inconsistent with the intent to arbitrate under state law. SWA clearly did not make the "earliest feasible decision" to pursue an alternative means to compel arbitration. Addressing a very similar procedural posture as the one here, one court astutely noted,

> Declining to find waiver in this case would create a loophole for defendants who seek to compel arbitration in a putative class or collective action. Defendants could choose one statute, such as the FAA or a state arbitration statute, to compel action against named plaintiffs, and then—and only if they lose—have the chutzpah to invoke the other statute years later. This situation denies parties the benefit of arbitration: the "efficient and low-cost resolution of disputes." (citation omitted) Defendant's conduct reflects dilatory litigation tactics at their worst, by preventing the timely resolution of an important dispute about the payment of minimum wages.

*Oliveira v. New Prime, Inc.,* 424 F. Supp. 3d 206, 214 (D. Mass. 2019).

Thus, Defendant has waived its argument that Plaintiff should be compelled to arbitration under the IUAA.

## C.    The Terms of Defendant's ADR Agreements Are Substantively Unconscionable.

In the event this Court were to find that Defendant did not waive its IUAA argument, which it clearly did, the Court should find the ADR Agreements to be unconscionable and, therefore, unenforceable. In Illinois, "[a] finding of unconscionability may be based on either procedural or

substantive unconscionability, or a combination of both." *Kinkel v. Cingular Wireless LLC*, 223 Ill. 2d 1, 21 (2006) (citing *Razor v. Hyundai Motor America*, 222 Ill. 2d 75, 99 (2006)). The ADR Agreements here are clearly substantively unconscionable and must not be enforced.

The ADR Agreements are one of adhesion as they were presented on a take it or leave it basis with overwhelmingly favorable language as to Defendant as they protect SWA's interests while minimizing the rights of Plaintiff and individuals similarly situated. Substantive unconscionability relates to the actual terms of an agreement and considers the fairness of the obligations adopted. Indicative of substantive unconscionability are contract terms that are so one-sided and unfair as to oppress a party, a general imbalance in the obligations and entitlements imposed, and significant cost-price disparity. *See Kinkel*, 223 Ill. 2d at 28; *see also Championsworld, LLC v. United States Soccer Fed., Inc.,* 890 F. Supp. 2d 912, 945 (N.D. Ill. 2012). Substantive unconscionability concerns the question whether the terms themselves are reasonable. *See Frank's Maint. & Eng'g, Inc. v. C.A. Roberts Co.*, 86 Ill. App. 3d 980 (1st Dist. 1980).

The ADR Agreements are unconscionable. The Parties clearly have vastly unequal bargaining positions. The ramp supervisors had no choice but to sign the agreement. *See* Exhibit 1, Saxon Declaration ("Saxon Decl."), ¶¶ 10-15; *see also* Dkt. No. 71-1 at ¶ 6 ("employees would have to accept the acknowledgment of the ADR Program to access SWALife"); Dkt. No. 71 at 9 ("Southwest would further restrict Plaintiff's access to Southwest's intranet, SWALife, if she did not acknowledge having reviewed the ADR Program."). By continuing employment with Defendant after the effective date of the ADR Agreements, or by accepting an offer of employment with SWA after the effective date of the ADR Agreements, each employee (*i.e.* ramp supervisor) not subject to the collective bargaining agreement, and each prospective employee applying for a

11

position not subject to the collective bargaining agreement, are, as a condition of continuing employment or receiving an offer of employment, bound to resolve all "Covered Claims" (as defined in the ADR Agreements) through arbitration. *Id.* It is clear by the terms of the ADR Agreements that they categorically exclude rights that are typically afforded litigants. Although contracts of adhesion are recognized in Illinois, if there are equitable and legal grounds for revocation, the agreement should not be enforced. *Koveleskie v. SBC Capital Markets, Inc.,* 167 F.3d 361, 367-68 (7th Cir. 1999). That is precisely the case here.

First, according to the Agreement, the discovery is limited to one deposition of the other party, five interrogatories (including subparts), and only three requests for production (including subparts). *See* Dkt. No. 71-1, at 12.[6] If a party can present a compelling argument that additional discovery is "necessary," the arbitrator, in his or her discretion, is only granted authority to allow up to two additional depositions. *Id.* Although both Plaintiff and Defendant are equally bound by these terms, that is where the equal playing field ends.

The discovery limitations prescribed in the ADR Agreements clearly prejudices Plaintiff and overwhelmingly creates an imbalance of rights substantially in favor of Defendant. The ADR Agreements contemplate individual arbitration. This is important because the Defendant, the drafter of the ADR Agreements, clearly anticipated the need for only one deposition (*i.e.,* the individual pursuing the matter). Plaintiff, though, would be prevented from exercising the discovery rights afforded her in court and is limited to one, and only one, deposition, despite the fact that there are almost always multiple people involved in the implementation and enforcement

---

[6] In contrast, parties are allowed 30 interrogatories and no limit on requests for production or depositions in Illinois state court. *See* Ill. S. Ct. R. 213(c), Ill. S. Ct. R. 214, and Ill. S. Ct. R. 206(d). Likewise, parties are allowed 25 interrogatories, 10 depositions (unless otherwise agreed by the parties), and 25 requests for production in federal court. *See* Fed. R. Civ. P. 33(a)(1), Fed. R. Civ. P. 30(a)(2), and Fed. R. Civ. P. 34.

of company policies. Furthermore, most, if not all, of the necessary discovery materials are presumably already within Defendant's possession. The limitations on written discovery and the number of documents Plaintiff can seek severely prejudices her ability to present and prove her case. And, only if the arbitrator deems it "necessary" for additional discovery is he or she permitted to "order up to two additional depositions," nothing more. *Id.* On its face, these terms are unreasonable and clearly establish an imbalance of rights amongst the Parties.

Next, the ADR Agreements dictate that if an individual pursues a "Covered Claim" in court rather than in arbitration, and refuses to voluntarily dismiss the lawsuit, Defendant will be entitled to all its attorneys' fees incurred enforcing the Agreement. *See* Dkt. No. 71-1, at 14. An employee who challenges the ADR Agreements must reimburse Defendant for all such fees, and potentially have their wages garnished, until they can then proceed with arbitration. *Id*. In this case, theoretically, if this Court were to grant Defendant's Third Motion, Plaintiff is potentially responsible for reimbursing Defendant *for over three-and-a-half years of attorneys' fees* for challenging and prevailing on the fact that she is a transportation worker exempt from the FAA at both the Seventh Circuit and Supreme Court levels. As the Supreme Court has noted, "[i]t may well be that the existence of large arbitration costs could preclude a litigant … from effectively vindicating her federal statutory rights in the arbitral forum." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 90 (2000); *see also Livingston v. Associates Fin., Inc.,* 339 F.3d 553, 557 (7th Cir. 2003); *see also Baumann v. Finish Line, Inc.,* 421 F. App'x 632, 635 (7th Cir. 2011). There is no clear standard for determining when the costs associated with arbitration will be prohibitive, but the Seventh Circuit has outline two essential questions: (1) the party's financial situation, and (2) how the costs will compare between litigating in the courts versus proceeding in arbitration. *Baumann*, 421 F. App'x at 635 (citing *James v. McDonald Corp*., 417 F. 3d 672, 678-

13

80 (7th Cir. 2005)). Plaintiff is a low wage, hourly-paid ramp supervisor who cannot afford three-and-a-half years' worth of litigation expenses, just to pursue her legal rights, and prevail. *See* Dkt. No. 1, ¶ 14. By proceeding in court, Plaintiff was able to enter into a contingency agreement with her attorneys, providing her with an opportunity to pursue her legal rights without the burden of legal fees and costs, even if she was unsuccessful. Plaintiff would be greatly burdened and unable to pursue arbitration should she have to pay defense counsel's fees for successfully prevailing on the one and only issue SWA asserted in its First Motion.

### 1. The ADR Agreement is Unconscionable and Should Not be Severed.

An agreement to arbitrate is treated like any other contract, and if there is no contract, then there is to be no forced arbitration. *Gibson v. Neighborhood Health Clinics*, 121 F.3d 1126, 1130 (7th Cir. 1997). Here, the ADR Agreements are substantively unconscionable as a whole; thus, it is improper to sever the provisions noted above from the ADR Agreements.

When determining whether to sever provisions of an agreement, courts generally focus on two factors: (1) whether the unlawful provision is essential to the agreement as a whole, and (2) whether multiple unlawful provisions support the conclusion that the drafter was attempting to undermine the other party's rights. *Herrington v. Waterstone Mortg. Corp.,* 2012 WL 1242318, at *7 (W.D. Wisc. Mar. 16, 2012); *see also Parilla v. IAP*, 368 F.3d 269 (3rd Cir. 2004) ("a multitude of unconscionable provisions in an agreement to arbitrate will preclude severance and enforcement of arbitration if they evidence a deliberate attempt by an employer to impose an arbitration scheme designed to discourage an employee's resort to arbitration or to produce results biased in the employer's favor").

The existence of multiple unconscionable provisions will not always evidence serious misconduct; instead, the analysis will depend on: (1) the number of provisions and (2) whether the

14

degree of unfairness supports the inference that the employer was not seeking a legitimate mechanism for dispute resolution but instead sought to impose a scheme that it was aware or should have known would provide it with an impermissible advantage. *Parilla*, 368 F.3d at 289. It is clear, on their face, that the ADR Agreements are unconscionable and should not be enforced. As noted above, the ADR Agreements contain multiple provisions that are patently substantively unconscionable, which support the inference that Defendant knew or should have known that including them gave it an impermissible advantage. The ADR Agreements limit discovery and Plaintiff's ability to prove her case. Employees, including Plaintiff, who challenge the legality of the provisions contained within the Agreements, are burdened with the possibility that if a challenge is wrong, they will not be able to pursue a remedy through arbitration because it will be too costly, actively discouraging Defendant's employees from pursuing their legal rights. These provisions are central to the ADR Agreements and cannot be severed without destroying the central purpose of the Agreements.[7] Thus, severing the unconscionable provisions would be improper; therefore, this Court should hold the ADR Agreements unenforceable.

> **D.    The Agreements to Arbitrate are Void as a Matter of Public Policy.**

Even if this Court were to hold that Defendant can somehow circumvent Rule 12(g)(2) and Rule 12(h)(1)(A) and the waiver doctrine, or if the Court does not find the ADR Agreements to be substantively unconscionable, Plaintiff is still not bound to arbitration under the IUAA, as amended by the WTA. The WTA, which applies to contracts executed, modified, or extended on or after January 1, 2020, provides, in relevant part:

---

[7] It is worth noting that the *only* provision in the ADR Agreements that is not severable is the waiver of an employee's right to pursue a dispute on a class or collective basis. *See* Dkt. No. 71-1, at 15. Again, a term that clearly favors Defendant and defeats the purpose of the FLSA. *See Barrentine v. Arkansas-Best Freight Sys., Inc.,* 450 U.S. 728, 739 (1981) (FLSA purpose "to protect all covered workers from substandard wages and oppressive working hours").

> Any agreement . . . that is a unilateral condition of employment or continued employment and requires the employee . . . to waive, arbitrate, or otherwise diminish any existing or future claim, right, or benefit related to an unlawful employment practice . . . is against public policy, void to the extent it denies an employee . . . a substantive or procedural right or remedy related to alleged unlawful employment practices, and severable from an otherwise valid and enforceable contract under this Act.

820 ILCS 96/1-10(c), 1-25(b).

Under the WTA, a "unilateral condition of employment or continued employment" means any contract, agreement, clause, covenant, or waiver an employer requires an employee to accept as a non-negotiable material term in order to retain employment. *See* 820 ILCS 96/1-15. An "unlawful employment practice" is defined as "any form of unlawful discrimination, harassment, or retaliation that is actionable under Article 2 of the Illinois Human Rights Act, Title VII of the Civil Rights Act of 1964, or any other related State or federal rule or law that is enforced by the Illinois Department of Human Rights or the Equal Employment Opportunity Commission." *Id.*

Defendant's own submissions concede that Plaintiff entered into the ADR Agreements as a unilateral condition of continued employment with SWA, as it admits that it requires its supervisory employees not covered under a CBA to execute an ADR Agreement in the CBA's absence. *See* Dkt. No. 71-1, at ¶ 4 ("Southwest applies the ADR Program to all Southwest supervisory employees"); *8 ("[b]y…continuing employment with Southwest Airlines after receiving a copy of this Agreement, each Employee…agrees, as a condition of…continuing employment…to resolve all of his/her Covered Claims…using this ADR Program… ."). If Defendant's own admissions weren't enough, SWA's method of securing signatures on its annual ADR Agreements from ramp supervisors also demonstrates that it effectively requires its employees to submit all claims arising out of their employment with SWA to final arbitration. *See* Dkt. 14, at *2; Dkt. 71-1, at *8-16; Ex. 1, Saxon Decl., at ¶¶ 10-15. To obtain executed agreements

from its employees, SWA distributed the agreements for signature through its employee-facing intranet, referred to as "SWALife," which is home to a number resources essential for daily job performance, including information regarding Plaintiff's daily job assignments, including information on where she will be stationed and who she will be overseeing, flight statuses, her paystubs and benefits, ground operations manuals, Federal Aviation Administration rules, and required training materials, among various other resources. Ex. 1, Saxon Decl. at ¶¶ 6-7, 10-11, 14-15. SWA configured the notification feature in SWALife so that, when SWA sends employees, including Saxon, its annual ADR Agreement, employees are required to accept and acknowledge it or lose access to SWALife, without any opportunity to negotiate its terms. *Id.* at ¶¶ 10-15. The ADR Agreements were indisputably a unilateral condition of continued employment with SWA under the WTA.

Likewise, the ADR Agreements require Plaintiff to submit current or future claims for unlawful employment practices, as defined under the WTA, to arbitration, including claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, for example. *See* Dkt. No. 71-1, at *9. The provision purporting to require Plaintiff to arbitrate her claims for unlawful employment practices is inseparable from the ADR Agreements' broad, all-encompassing clause requiring arbitration of claims arising from her employment with SWA. Because the illegal provisions are inseverable from the ADR Agreements, the agreement to arbitrate is unenforceable under the WTA as a matter of public policy.[8]

---

[8] The arbitration agreements in both *Atwood* and *Sherwood* were entered into before the effective date of the WTA. *See* 2016 WL 2766656, at *1; 587 F.3d at 842. As such, the WTA could not apply, given its application is limited to contracts entered into, modified, or extended on or after January 1, 2020, the effective date of the Act. *See* 820 ILCS 96/1-10(c). Thus, the *Atwood* and *Sherwood* courts had no opportunity to assess the effect of the WTA on the relevant agreements.

17

## III.     <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff Latrice Saxon respectfully requests this Honorable Court deny Defendant's Renewed Motion to Compel Arbitration.

Date:   August 16, 2022                              Respectfully Submitted,

*/s/ Andrew C. Ficzko*
Ryan F. Stephan
James B. Zouras
Andrew C. Ficzko
**STEPHAN ZOURAS, LLP**
100 N. Riverside Plaza
Suite 2150
Chicago, Illinois 60601
312.233.1550
312.233.1560 *f*
rstephan@stephanzouras.com
jzouras@stephanzouras.com
aficzko@stephanzouras.com

**ATTORNEYS FOR PLAINTIFF**

## <u>CERTIFICATE OF SERVICE</u>

I, the attorney, hereby certify that on August 16, 2022, I filed the attached with the Clerk of the Court using the electronic filing system which will send such filing to all attorneys of record.

*/s/ Andrew C. Ficzko*