**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LATRICE SAXON, individually, and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:19-cv-00403 |
| v. | ) ) | Honorable Robert M. Dow Jr. |
| SOUTHWEST AIRLINES CO., | ) ) | |
| Defendant. | ) ) | |

**PLAINTIFF'S OPPOSITION IN RESPONSE TO**
**DEFENDANT'S RENEWED MOTION TO STRIKE COLLECTIVE ACTION**
**ALLEGATIONS**

## TABLE OF CONTENTS

I.      **PROCEDURAL HISTORY** ...................................................................................1

II.     **ARGUMENT** .......................................................................................................3

     A.    **Defendant's Rule 12(f) Argument Is Precluded By Rule 12(g)(2).**.................3

     B.    **Defendant Waived Its Rule 12(f) Argument.**....................................................5

     C.    **Even If The Court Finds That Defendant Has Not Waived Its Rule 12(f) Argument, Motions To Strike Are Heavily Disfavored.**................................6

          1.    **Striking Collective Allegations is Improper and Unwarranted.**.........6

          2.    **Defendant's ADR Agreements Are Substantively Unconscionable and Cannot Be Enforced.**...........................................................................8

          3.    **Defendant's Collective Action Waiver Is Unenforceable Because It Circumvents Employees' Rights Under the FLSA.** ...........................12

          4.    **Defendant Has Not Met Its Strict Burden To Justify Striking Collective Allegations Under Rule 12(f).**................................................13

     D.    **The Viability of the FLSA Collective Is Not Properly Before the Court.**......16

III.    **CONCLUSION** ...................................................................................................18

i

# TABLE OF AUTHORITIES

**Cases**                                                **Page(s)**

*About U.S. Real Est., Inc. v. Burnley*,
2015 WL 3397025 (N.D. Ill. May 26, 2015) ............................................................... 4

*Anderson v. Bd. of Educ. of Chi.*,
169 F. Supp. 2d 864 (N.D. Ill. 2001) ....................................................................... 14

*Armendariz v. Found Health Psychcare Services, Inc.*,
6 P.3d 669 (Cal. 2000) ........................................................................................... 8

*Bailey v. Vulcan Materials Co.*,
2021 WL 5860743 (N.D. Ga. Nov. 16, 2021) ........................................................... 15

*Barrentine v. Arkansas–Best Freight System, Inc.*,
450 U.S. 728 (1981) ............................................................................................... 13

*Baumann v. Finish Line, Inc.*,
421 F. App'x 632 (7th Cir. 2011) ........................................................................... 11

*Beltran v. AuPairCare, Inc.*,
907 F.3d 1240 (10th Cir. 2018) ................................................................................. 8

*Bigger v. Facebook, Inc.*,
947 F.3d 1043 (7th Cir. 2020) ................................................................................ 17

*Boatwright v. Walgreen Co.*,
2011 WL 843898 (N.D. Ill. Mar. 4, 2011) ................................................................. 6

*Camilo v. Uber Techs., Inc.*,
2018 WL 2464507 (S.D.N.Y. May 31, 2018) ........................................................... 16

*Carrol v. S.C. Johnsons & Son, Inc.*,
2018 WL 1695421 (N.D. Ill. Mar. 29, 2018) .............................................................. 6

*Castellanos v. Raymours Furniture Company, Inc.*,
291 F. Supp. 3d 294 (E.D.N.Y. 2018) ..................................................................... 15

*Championsworld, LLC v. U.S. Soccer Fed., Inc.*,
890 F. Supp. 2d 912 (N.D. Ill. 2012) ........................................................................ 8

*Chapman v. First Index, Inc.*,
796 F.3d 783 (7th Cir. 2015) .................................................................................... 6

*Coggins v. Cnty. of Nassau,*
   615 F. Supp. 2d 11 (E.D.N.Y. 2009) ........................................................ 5

*Connectors Realty Group Corp. v. State Farm Fire & Cas. Co.,*
   2021 WL 1143513 (N.D. Ill. Mar. 25, 2021).................................... 14, 16

*Crumpton v. Octapharma Plasma, Inc.,*
   513 F. Supp. 3d 1006 (N.D. Ill. 2021) ..................................................... 3

*Dae Sub Choi v. Sushi Maru Express Corp.,*
   2018 WL 5630760 (D.N.J. Oct. 30, 2018)............................................. 15

*Damasco v. Clearwire Corp.,*
   662 F.3d 891 (7th Cir. 2011) ................................................................... 6

*DeGroff v. MascoTech Forming Technologies-Fort Wayne, Inc.,*
   179 F. Supp. 2d 896 (N.D. Ind. 2001) ..................................................... 9

*Ennenga v. Starns,*
   677 F.3d 766 (7th Cir. 2012) ................................................................... 3

*Epic Systems Corp v. Lewis,*
   138 S. Ct. 1612 (2018) ........................................................................... 13

*Figueroa v. Kronos Inc.,*
   2020 WL 1848206 (N.D. Ill. April 13, 2020) .......................................... 7

*Fitz v. NCR Corp.,*
   118 Cal. App. 4th 702 (2004) ................................................................... 9

*Flores v. Lifeway Foods, Inc.,*
   289 F. Supp. 2d 1042 (N.D. Ill. 2003) ................................................... 17

*Geiger v. Ryan's Family Steak Houses, Inc.,*
   134 F. Supp. 2d 985 (S.D. Ind. 2001) ..................................................... 9

*Girolamo v. Comm. Physical Therapy & Assoc., Ltd, et al.,*
   2016 WL 3693426 (N.D. Ill. July 12, 2016)........................................... 17

*Green Tree Fin. Corp.-Alabama v. Randolph,*
   531 U.S. 79 (2000)................................................................................. 11

*Guzman v. N. Illinois Gas Co.,*
   2009 WL 3762202 (N.D. Ill. Nov. 6, 2009) ............................................. 6

*James v. McDonald Corp.*,
   417 F.3d 672 (7th Cir. 2005) ........................................................ 11

*Jones v. BRG Sports, Inc.*,
   2019 WL 3554374 (N.D. Ill. Aug. 1, 2019) ........................................ 16

*Killion v. KeHE Distributors, LLC*,
   761 F.3d 574 (6th Cir. 2014) ................................................... 12, 13

*Kinkel v. Cingular Wireless LLC*,
   223 Ill. 2d 1 (2006) .................................................................. 8

*Koveleskie v. SBC Capital Markets, Inc.*,
   167 F.3d 361 (7th Cir. 1999) ........................................................ 8

*Lim v. TForce Logistics, LLC*,
   8 F.4th 992 (9th Cir. 2021). ......................................................... 8

*Livingston v. Associates Fin., Inc.*,
   339 F.3d 553 (7th Cir. 2003) ....................................................... 11

*Mace v. Van Ru Credit Corp.*,
   109 F.3d 338 (7th Cir. 1997) ....................................................... 17

*Martin v. CB Rest. Inc.*,
   2021 WL 2701952 (W.D. Tex. Mar. 12, 2021) ................................... 15

*Morgan v. Sundance, Inc.*,
   142 S. Ct. 1708 (2022) ............................................................... 5

*Muller v. Morgan*,
   2013 WL 2422737 (N.D. Ill. Jun. 3, 2013) ......................................... 3

*Nino v. Jewelry Exchange, Inc.*,
   609 F.3d 191 (3rd Cir. 2010) .................................................. 8, 11

*Parilla v. IAP Worldwide Services, VI, Inc.*,
   368 F.3d 269 (3rd Cir. 2004) ...................................................... 11

*Penn v. Ryan's Family Steak Houses, Inc.*,
   269 F.3d 753 (7th Cir. 2001) ........................................................ 9

*Quinn v. Auto Injury Sols., Inc.*,
   2020 WL 9397520 (N.D. Ill. Nov. 24, 2020) ..................................... 13

*Quinn v. Specialized Loan Servicing, LLC*,
   414 F. Supp. 3d 1122 (N.D. Ill. 2019) ........................................................ 3

*Razor v. Hyundai Motor America*,
   222 Ill. 2d 75 (2006) ....................................................................................... 8

*Riemer v. Chase Bank, N.A.*,
   275 F.R.D. 492 (N.D. Ill. 2011) .................................................................... 3

*Shelby v. United Contl. Holdings, Inc.*,
   2020 WL 2836796 (N.D. Ill. May 31, 2020) ............................................... 4

*Southwest Airlines Co. v. Saxon*,
   142 S. Ct. 1783 (2022) .................................................................................... 2

*St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prds. Co., Inc.*,
   969 F.2d 585 (7th Cir. 1992) ......................................................................... 5

*Tucker Firm, LLC v. Alise*,
   2012 WL 252790 (N.D. Ill. 2012) ............................................................... 14

*U.S. v. Olano*,
   507 U.S. 725 (1993) ......................................................................................... 5

*Vaugh v. Pittsburgh Fondue, LLC*,
   2021 WL 2952902 (W.D. Pa. July 14, 2021) ............................................. 15

*Volling v. Antioch Rescue Squad*,
   999 F. Supp. 2d 991 (N.D. Ill. 2013) .......................................................... 14

*Wal-Mart Stores, Inc v. Dukes*,
   564 U.S. 338 (2011) ......................................................................................... 6

*Woodson v. Cook County Sheriff*,
   1996 WL 604051 (N.D. Ill. Oct. 18, 1996) ................................................ 14

**Statutes**
29 U.S.C. § 202(a) ............................................................................................. 13

**Rules**
Fed. R. Civ. P. 12(f) ..................................................................................... 3, 14
Fed. R. Civ. P. 12(g) ..................................................................................... 3, 4
Fed. R. Civ. P. 30 .............................................................................................. 9
Ill. S. Ct. R. 206 ................................................................................................ 9

After failing to raise the argument in its first Rule 12(b)(3) motion to compel arbitration, and only after receiving an unfavorable Seventh Circuit decision that found Plaintiff and all other ramp supervisors exempt from the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, Defendant, Southwest Airlines Co. ("SWA" or "Defendant") now brings its *fifth* Rule 12 motion, this time under Rule 12(f), seeking to strike Plaintiff's collective action allegations. Defendant's failure to raise this argument in its initial Rule 12(b)(3) motion nearly three and a half years ago is fatal; SWA has waived this argument by failing to raise it in a timely manner.

Even if the Court were to permit Defendant to raise its belated Rule 12(f) argument, Defendant has also not met its burden to show that striking collective action allegations under Rule 12(f) will prevent piecemeal litigation and that Defendant will be prejudiced by the collective action allegations. But motions to strike class and/or collective allegations, typically seen in Rule 23 class actions, are heavily disfavored at the initial pleading stage, before any discovery has taken place, regardless of the procedural mechanism employed. Even absent waiver, the basis for Defendant's motion – its ADR Agreements – is substantively unconscionable, and SWA cannot meet its burden to show that striking collective action allegations is warranted at the pleading stage. Its motion should be denied.

## I.     PROCEDURAL HISTORY

Plaintiff filed this collective action more than three and a half years ago, alleging that SWA failed to pay overtime compensation to its ramp supervisors in violation of the Fair Labor Standards Act ("FLSA") 29 U.S.C. §§ 201, *et seq. See* Dkt. No 1. On April 8, 2019, Defendant filed its first motion to dismiss or stay in favor of arbitration under the FAA and Rule 12(b)(3), which was granted. *See* Dkt. Nos. 13, 31.

On appeal, the Seventh Circuit reversed, finding that Plaintiff and all other similarly-

situated ramp supervisors are transportation workers whose contracts of employment are exempted from the FAA. *See* Dkt. No. 33; App. Dkt Nos. 60, 61. Four months after the Seventh Circuit's decision, on August 3, 2021, and over two years after filing its first motion to compel arbitration, SWA filed a second Rule 12(b)(3) motion to compel (Dkt. No. 52), arguing for the first time that Plaintiff is bound to arbitrate under the Illinois Uniform Arbitration Act ("IUAA"), 710 ILCS 5/1 *et seq.*, and simultaneously filed a third Rule 12 motion (*i.e.,* its original motion to strike collective action allegations) (Dkt. No. 54), both of which were fully briefed.[1] Approximately three weeks later, Defendant filed a Petition for Writ of Certiorari, which was granted by the Supreme Court. In light of the Supreme Court proceedings, this Court struck, with leave to refile instanter, SWA's original motion to strike collective action allegations and its second motion to compel, pending the Supreme Court's decision. *See* Dkt. No. 68. On June 6, 2022, the Supreme Court affirmed the judgment of the Seventh Circuit and held that Plaintiff and all other SWA ramp supervisors, whose duty is to load and unload interstate cargo, are engaged in commerce and considered transportation workers whose contracts of employment are exempted from the FAA. *Southwest Airlines Co. v. Saxon*, 142 S. Ct. 1783 (2022).

On July 6, 2022, nearly three and a half years after the lawsuit was filed, Defendant filed its renewed motion to compel (its fourth Rule 12 motion) (Dkt. No. 70), along with the instant Renewed Motion to Strike Collective Action Allegations (its fifth Rule 12 motion) (Dkt. No. 72).

---

[1] Plaintiff will respond to Defendant's renewed motion to compel arbitration separately, but notes that both of Defendant's renewed motions contravene the purpose of Rule 12(g)(2) by creating piecemeal litigation in which a defendant moves to dismiss on one ground, loses, then files a second motion on another ground.

## II.     ARGUMENT

### A.     Defendant's Rule 12(f) Argument Is Precluded By Rule 12(g)(2).

Rule 12(g)(2), titled, "Limitation on Further Motions," expressly states, "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). The Seventh Circuit notes, "[t]he policy behind Rule 12(g) is to prevent piecemeal litigation in which a defendant moves to dismiss on one ground, loses, then files a second motion on another ground." *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012).

Despite previously filing a motion under Rule 12(b)(3), Defendant now moves to strike the collective allegations from Plaintiff's complaint under Rule 12(f), which allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Importantly, a Rule 12(f) motion "is not a mechanism for deciding disputed issues of law or fact," especially where, as here, there has been no discovery relating to conditional certification. *Riemer v. Chase Bank, N.A.*, 275 F.R.D. 492, 494 (N.D. Ill. 2011). As courts have noted, "[m]otions to strike are generally disfavored… ." *Crumpton v. Octapharma Plasma, Inc.*, 513 F. Supp. 3d 1006, 1011 (N.D. Ill. 2021). Applying Rule 12(g)(2), courts in this district have held that failing to bring a 12(f) motion to strike contemporaneously with a Rule 12 motion is improper. *See e.g.*, *Muller v. Morgan*, 2013 WL 2422737, at *6 (N.D. Ill. Jun. 3, 2013) (noting that the "Motion to Strike pursuant to 12(f) also should have been brought with the original Motion to Dismiss, and is thus improper under Rule 12(g)(2)."); *Quinn v. Specialized Loan Servicing, LLC*, 414 F. Supp. 3d 1122, 1126 (N.D. Ill. 2019) (denying successive Rule 12(f)

motions and stating defendant cannot "use a motion to strike to circumvent Rule 12's waiver provisions.").

In its first Rule 12(b)(3) motion, Defendant asserted arguments for improper venue, contending that Plaintiff was bound under the FAA to an arbitration agreement that included a collective action waiver, and thus, her entire case should be dismissed in favor of arbitration. *See* Dkt. No. 13. After losing on appeal, SWA changed course and asserted a new defense under Rule 12(f), arguing that Plaintiff allegedly waived her right to proceed on a collective basis, and therefore, her collective allegations should be stricken. *See generally* Dkt. No. 73. But Defendant's parade of motions, including its first Rule 12(b)(3) motion, its original motion to strike, its second motion to compel, its renewed motion to compel, and now the instant Renewed Motion to Strike, are ***exactly*** the type of piecemeal litigation that Rule 12(g) forbids. Defendant filed its first Rule 12(b)(3) motion, lost, and is now attempting to turn back the clock by filing multiple new Rule 12 motions on similar grounds, years after the complaint was filed. The purported basis for SWA's renewed motions did not arise recently; it was available at the time it filed its first Rule 12(b)(3) motion. But it chose not to, and as result, Defendant waived the right to assert the argument now. *See About U.S. Real Est., Inc. v. Burnley*, 2015 WL 3397025, at *3 (N.D. Ill. May 26, 2015) (holding a defendant's belated argument is waived if it was omitted in a Rule 12 motion but "'was available to the party' when the 'earlier motion' was filed") (citing Fed. R. Civ. P. 12(g)(2)); *see also Shelby v. United Contl. Holdings, Inc.,* 2020 WL 2836796, at *4 (N.D. Ill. May 31, 2020) (holding that a defendant who fails to raise an argument in their original Rule 12 motion, which was "equally available to them" at that time, is "forbid[den]" from raising the argument). The Court should not reward Defendant's dilatory litigation tactics, which are dramatically preventing timely resolution of an important dispute over unpaid wages. Defendant's failure to raise the

4

argument in the instant Motion with its first Rule 12(b)(3) motion results in waiver of this arguments, and its Renewed Motion to Strike must be denied.

### B. Defendant Waived Its Rule 12(f) Argument.

A contractual right can be waived, and that waiver can be either explicit or inferred from a party's actions. *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prds. Co., Inc.*, 969 F.2d 585, 587 (7th Cir. 1992). Waiver is the "intentional relinquishment or abandonment of a known right." *U.S. v. Olano*, 507 U.S. 725, 733 (1993). "To decide whether a waiver has occurred, the court focuses on the actions of the [party] who held the right; the court seldom considers the effects of those actions on the opposing party. That analysis applies to the waiver of a contractual right, as of any other." *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022).

Here, SWA abandoned the right to raise the Rule 12(f) argument in its Renewed Motion Strike, as revealed by even the most cursory review of its litigation conduct during the two and a half years after the complaint was filed. Defendant obviously knew Saxon brought this matter as a collective action when she filed it in January 2019. Dkt. No. 1. Defendant itself drafted the ADR Agreements containing the provision purportedly preventing Plaintiff from bringing collective action claims yet failed to move to strike the collective action allegations at the onset in its first Rule 12 motion. Instead, SWA waited over two and a half years after the case was filed before raising it for the first time. "Waiver may be established by affirmative conduct or by a failure to act that evinces the intent to abandon the right." *Coggins v. Cnty. of Nassau*, 615 F. Supp. 2d 11, 30 (E.D.N.Y. 2009). Only after Defendant received an unfavorable ruling from the Seventh Circuit holding Plaintiff exempt from the FAA did Defendant try to play a card it held for nearly 32 months. SWA waived its Rule 12(f) argument, and its Motion should be denied.

**C.** **Even If The Court Finds That Defendant Has Not Waived Its Rule 12(f) Argument, Motions To Strike Are Heavily Disfavored.**

### 1. Striking Collective Allegations is Improper and Unwarranted.

Even if SWA had not waived the issue, which it did, striking collective allegations is unwarranted. First, even though Defendant admits that "Rule 23 is not applicable to this FLSA collective action," Defendant inexplicably implores this Court to analyze Plaintiff's allegations through the lens of Rule 23(d)(1)(D), a rule that allows a court to "require that the pleadings be amended to eliminate allegations about representation of absent persons…." *See* Dkt. No. 73 at 4–6. But Rule 23, which is the proper procedural vehicle for *class actions*, is inapplicable here because Plaintiff asserts her claims on behalf of a putative collective under 29 U.S.C. § 216(b*).* See Dkt. No. 1 at ¶¶ 21–27. Even if this Court were to follow Defendant's improper and untimely procedural suggestion, motions to strike class allegations are heavily disfavored at such an early stage. *See e.g*., *Damasco v. Clearwire Corp*., 662 F.3d 891, 897 (7th Cir. 2011) ("[A] court may abuse its discretion by not allowing ... discovery before deciding whether to certify a class.") (overruled on other grounds); *Chapman v. First Index, Inc*., 796 F.3d 783 (7th Cir. 2015); *Carrol v. S.C. Johnsons & Son, Inc*., 2018 WL 1695421, at *5 (N.D. Ill. Mar. 29, 2018) (collecting cases); *Guzman v. N. Illinois Gas Co*., 2009 WL 3762202, at *2 (N.D. Ill. Nov. 6, 2009) (striking class allegations at the pleading stage disfavored, because "[c]lass action defendants ... are often in control of the information plaintiffs need to meet that burden [of class certification].").

A complaint that self-defeats class or collective conditional certification is rare. The reason is that certification requires a "rigorous analysis," *Wal-Mart Stores, Inc v. Dukes*, 564 U.S. 338, 350–51 (2011), that most often involves a fact-intensive investigation by both the parties and the court. *Boatwright v. Walgreen Co.*, 2011 WL 843898, at *2 (N.D. Ill. Mar. 4, 2011) ("Because a class determination decision generally involves considerations that are enmeshed in the factual and

legal issues comprising the plaintiff's cause of action, . . . a decision denying class status by striking class allegations at the pleading stage is inappropriate."). Here, where the Parties have not conducted any discovery relating to collective certification, and the case remains at the pleading stage, striking the collective allegations is plainly premature and improper. Defendant fails to overcome the hurdle of demonstrating from the face of the complaint—or, more questionably, from hypotheticals outside of it—that conditional certification is impossible. But the substantive requirements of conditional certification (or class certification, as Defendant improperly implies) are irrelevant at this stage of the proceedings, where Plaintiff has sufficiently alleged collective allegations. *See generally*, Dkt. No. 1. SWA's common course of conduct alleged in the complaint means that conditional certification cannot be defeated at this early stage by unproven and likely irrelevant issues raised by Defendant.

Defendant seeks to toss Plaintiff's collective claims based on the unproven assertion that "[a]ll Ramp Supervisors at Southwest enter into the same arbitration agreement," and "[a]s such, any other Ramp Supervisor's efforts would be similarly futile." *See* Dkt. No. 73 at 5, n.3. But Defendant cannot dismiss Plaintiff's claims on such speculative assertions. *See Figueroa v. Kronos Inc.*, 2020 WL 1848206, at *11 (N.D. Ill. April 13, 2020) (denying motion to dismiss class allegations at the pleading stage despite defendant's assertion that "some putative class members' claims may be barred by … arbitration agreements" because "there is no way of knowing at this stage how many putative class members' claims would be impacted"). Defendant asks the Court to blindly overlook the glaring insufficiencies of its chosen procedural vehicle in order to improperly dismiss Plaintiff's collective claims before discovery has even begun. This Court should not entertain Defendant's gamesmanship, and its Motion to Strike must be denied.

**2.      Defendant's ADR Agreements Are Substantively Unconscionable and Cannot Be Enforced.**

Under Illinois law, a contract can be found unconscionable on procedural or substantive grounds, or both. *Kinkel v. Cingular Wireless LLC*, 223 Ill. 2d 1, 21 (2006) (citing *Razor v. Hyundai Motor America*, 222 Ill. 2d 75, 99 (2006)). A contract is substantively unconscionable when the terms of a contract are so one-sided and unfair as to oppress a party, create a general imbalance in the obligations and entitlements imposed, and establish a significant cost-price disparity. *See Kinkel*, 223 Ill. 2d at 28; *see also Championsworld, LLC v. U.S. Soccer Fed., Inc.*, 890 F. Supp. 2d 912, 945 (N.D. Ill. 2012).[2]

The ADR Agreements contain multiple provisions that, on their face, create a dramatic imbalance in the obligations and entitlements imposed on the Parties – in other words, the exact situation in which multiple courts have held that arbitration is not an "alternative" means to litigation, but rather an "inferior forum that works to the employers advantage." The ADR Agreements categorically grant SWA rights not afforded to its employees. Although contracts of adhesion are not unenforceable *per se*, an agreement will not be enforced if there are equitable and legal grounds for revocation deeming it unconscionable. *Koveleskie v. SBC Capital Markets, Inc.*, 167 F.3d 361, 367–68 (7th Cir. 1999).

---

[2] In considering unconscionability of arbitration agreements, courts have found that an arbitration agreement with more than one unconscionable provision must be found unconscionable as a whole, as it demonstrates "a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." *Armendariz v. Found Health Psychcare Services, Inc.*, 6 P.3d 669, 696–97 (Cal. 2000) (affirming trial court's refusal to enforce a contract with two unconscionable provisions); *Nino v. Jewelry Exchange, Inc.*, 609 F.3d 191, 206 (3rd Cir. 2010) (finding the agreement "baldly one-sided, with only one discernable purpose – to create advantages for the employer that are not afforded to the employee."); *Beltran v. AuPairCare, Inc.*, 907 F.3d 1240, 1262 (10th Cir. 2018) (adopting *Armendariz* standard); *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1005 (9th Cir. 2021).

First, under the ADR Agreements, the discovery the Parties can conduct is extremely limited. *See* Dkt. No. 71-1, at 12. While both Plaintiff and Defendant are equally limited, that is where the balance of equity ends. Discovery in individual arbitration contemplated by the ADR Agreements is limited to one deposition per side, unless a party can convince the arbitrator that additional discovery is "necessary." Then, the arbitrator is permitted to "order up to two additional depositions," and nothing more. *Id.* Having unilaterally drafted the ADR Agreements, Defendant clearly anticipated the need for only one deposition (*i.e.,* the individual pursuing the matter). However, employees, like Plaintiff, would be prohibited from exercising their discovery rights afforded to them under both state and federal rules of civil procedure, including the right to take multiple depositions. *See* Ill. S. Ct. R. 206(d); Fed. R. Civ. P. 30(a)(2). The terms of the ADR Agreements also limit the Parties to five total interrogatories and only three requests for production of documents, even though virtually all of the relevant data and documents are within SWA's exclusive possession and control. Because Defendant undeniably controls the documents needed to prove a wage and hour case (like here), including its own policies, time records, pay records, etc., this provision alone, by creating an unlevel playing field, dramatically restricts Plaintiff's ability to present and prove her case. On its face, this provision is unreasonable and clearly establishes an imbalance of rights amongst the Parties.[3]

---

[3] While voicing that placing limitations on discovery, in and of itself, may not result in an unconscionable contract, the Seventh Circuit has observed that "employment disputes are often extremely fact-intensive battles between witnesses with sharply different recollections of events, and a single deposition is likely to be inadequate in many cases." *Penn v. Ryan's Family Steak Houses, Inc.*, 269 F.3d 753, 757–58 (7th Cir. 2001). Courts have found that discovery limitations of the kind set forth in SWA's Agreements are unconscionable. *See, e.g., Geiger v. Ryan's Family Steak Houses, Inc.*, 134 F. Supp. 2d 985, 995–96 (S.D. Ind. 2001) (finding unconscionable arbitration agreement limited to one deposition with the right to take further depositions at the sole discretion of an arbitration panel); *Fitz v. NCR Corp.*, 118 Cal. App. 4th 702, 709 (2004) (affirming denial of motion to compel arbitration where the agreement significantly limited discovery and only allowed an arbitrator to allow for some additional discovery only if there was "compelling need"); *but see DeGroff v. MascoTech Forming Technologies-Fort Wayne, Inc.*, 179 F. Supp. 2d 896, 909 (N.D. Ind. 2001) (distinguishing that agreement limiting depositions not unconscionable where it permitted "broad document disclosure.").

Next, the ADR Agreements require all "Covered Claims" to be processed and decided through arbitration. Conveniently for Defendant, "Covered Claims" only include matters that an employee would bring. For example, "Covered Claims" include disputes relating to: employee wages, employee benefits, employee hours worked, as well as a host of other claims that involve employee rights only. *See* Dkt. No. 71-1, at 9–10. Furthermore, although the ADR Agreements are ostensibly bilateral, in practice, only employees are prohibited from bringing a class or collective action, which is unconscionably one-sided. *Id.* at 15.

Furthermore, the ADR Agreements require the party bringing claims to "submit the request in writing to General Counsel" so that General Counsel may "prepare a joint request for Arbitration" to the AAA. Dkt. No. 71-1 at 11–12. Again, this requirement inordinately favors SWA and prejudices the employee, as SWA's own counsel gets to unilaterally draft the arbitration request. For example, SWA's own counsel is exclusively empowered to describe, on behalf of an adverse litigant suing the company, the amount of their claim, the nature of their claim, the relief sought, and the number of days and/or hours that the hearing shall take. While SWA's best interests will be protected at all times by its General Counsel, the employee is bound to follow SWA's General Counsel's directives in seeking redress for their claim. Indeed, the arbitration procedure drafted by SWA does not provide for the employee's own independent representation by counsel *at all*. If an employee has any questions about the ADR procedure, they are directed – once again – to direct them to their adversary, SWA's own General Counsel. Dkt. No. 71-1 at 13.

Finally, employees are essentially barred from challenging the legality of the ADR Agreements without risking enormous monetary penalties. An employee who pursues a "Covered Claim" in court is potentially subject to paying all SWA's attorneys' fees incurred enforcing the

Agreement. *See id.* at 14. Until the employee reimburses Defendant for all its fees incurred in a challenge to the validity of the ADR Agreements, including through wage garnishment, they may not proceed with arbitration or otherwise exercise their legal rights. *Id*. No such comparable provision makes SWA liable, for example, to reimburse the employee for a successful challenge to its ADR Agreements in court. This is precisely the type of provision the Supreme Court has frowned upon. "It may well be that the existence of large arbitration costs could preclude a litigant … from effectively vindicating her federal statutory rights in the arbitral forum." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 90 (2000); *see also Livingston v. Associates Fin., Inc.,* 339 F.3d 553, 557 (7th Cir. 2003); *see also Baumann v. Finish Line, Inc.,* 421 F. App'x 632, 635 (7th Cir. 2011). Although there is no clear standard for determining when the costs associated with arbitration are prohibitive, the Seventh Circuit noted that a party's financial situation, as well as how the costs will compare between litigating in the courts versus proceeding in arbitration, should be taken into consideration. *Baumann*, 421 F. App'x at 635 (citing *James v. McDonald Corp*., 417 F.3d 672, 678–80 (7th Cir. 2005)). Because the one-way fee-shifting provisions in the SWA Agreements further multiply the financial imbalance between Defendant and its hourly-paid employees, the Agreements are substantively unconscionable and should not be enforced.[4]

A real-life illustration of the one-sided nature of SWA's ADR Agreements is *Prince v. Battles*, No. 2019 L 13185 (Cir. Ct. Cook Cty.) ("*Prince*"). Exhibit 1, *Prince* Answer and Counterclaim. A former SWA ramp supervisor, Jeffrey Battles, by stipulation, filed an arbitration

---

[4] Given the multiple conditions in SWA's ADR Agreements which disproportionately favor SWA and disfavor its employees, the agreement must be found unconscionable. For example, the Third Circuit voided an arbitration agreement as unconscionable under similar circumstances, where the agreement set conditions upon the employee not reciprocated to the employer (e.g., the employee had to notify the employer in writing in advance of filing claims, while the employer need not do the same), providing the employer an "impermissible advantage" over its employees. *Nino*, 609 F.3d at 207 (quoting *Parilla v. IAP Worldwide Services, VI, Inc.*, 368 F.3d 269, 289 (3rd Cir. 2004)).

action against SWA for unpaid overtime and retaliation under the FLSA. *Id.* One month after calling his supervisor, Emanual Prince, as an adverse witness at his arbitration hearing, Prince filed a lawsuit against Battles for defamation *per se*, false light privacy, intentional infliction of emotional distress, and negligent infliction of emotional distress. *Id.* Prince, as a SWA upper-management employee, was able to bring his claims rooted in "humiliation in the workplace" to court without: (1) any concern over reimbursing Battles for the fees he incurred in removing his claims (or a stay of his claims until he pay such fees); (2) having to forgo his right to a jury trial; (3) suffering any limitations in his ability to take depositions, request documents, and propound interrogatories; and (4) having to notify his opponent's counsel and await their response before proceeding with his case. However, when Battles counter-sued Prince and brought retaliation claims under the FLSA, he was forced to pursue those claims at arbitration under the ADR program. Exhibit 2, Jan. 13, 2021, *Prince* Order. Even as a former SWA employee being dragged into a lawsuit he claimed was retaliatory under the FLSA, Battles was still bound to follow SWA's ADR Agreements – the result being his former supervisor could litigate claims against him in state court while Battles had to submit his claim (after paying SWA's legal fees) to the limited forum of arbitration, even though both actions arose from the same nucleus of facts.

### 3. Defendant's Collective Action Waiver Is Unenforceable Because It Circumvents Employees' Rights Under The FLSA.

Outside of the arbitration context, some courts have found a standalone collective action waiver an unenforceable limitation on employees' rights under the FLSA. *Killion v. KeHE Distributors, LLC*, 761 F.3d 574, 592 (6th Cir. 2014) (finding that collective action waivers are impermissible restrictions of employees' FLSA rights that have the effect of granting their employer an unfair advantage over its competitors because having to litigate on an individual basis would likely discourage the employee from bringing a claim for overtime wages); *see also Quinn*

*v. Auto Injury Sols., Inc.*, 2020 WL 9397520, at *3 (N.D. Ill. Nov. 24, 2020). Here, where there is no valid arbitration agreement and no countervailing federal policy that outweighs the policy articulated in the FLSA, SWA's purported waiver of collective action claims is unenforceable because it allows Defendant to gain an advantage over its competitors. *Killion*, 761 F.3d at 591. Specifically, requiring Plaintiff to waive her FLSA rights and litigate on an individual basis directly contravenes the FLSA's explicit purpose of "protect[ing] all covered workers from substandard wages and oppressive working hours." *Barrentine v. Arkansas–Best Freight System, Inc.*, 450 U.S. 728, 739 (1981); *see also* 29 U.S.C. § 202(a).

A finding that Defendant's collective action waiver is unenforceable as it relates to employees who fall outside the purview of the FAA does not clash with *Epic Systems Corp v. Lewis*, 138 S. Ct. 1612 (2018). In *Epic Systems*, the Supreme Court held that the FLSA collective action mechanism does not displace the FAA, and thus, the Court upheld the validity of arbitration agreements that included class and collective action waivers. *Id*. at 1621–23. In so finding, the Supreme Court analyzed the policies underlying the FAA, in which Congress directed courts to "respect and enforce the parties' chosen arbitration procedures." *Id*. at 1621. Here, where the Supreme Court has already found the FAA to be inapplicable to Saxon and the putative collective action members, there are no similar policy concerns that require the Court to enforce a collective action waiver. While the Seventh Circuit has not yet addressed the issue of FLSA waivers in the absence of arbitration agreements, the Sixth Circuit's analysis in *Killion* is instructive. This Court should follow the decision in *Killion* and find Defendant's collective action waiver unenforceable.

### 4. Defendant Has Not Met Its Strict Burden To Justify Striking Collective Allegations Under Rule 12(f).

Although Defendant puts forth a plethora of Rule 23 case law in support of its Motion, it fails to meet its burden under the actual rule it brings its motion, Rule 12(f). Pursuant to Rule 12(f),

13

a district court has discretion to "strike from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *Connectors Realty Group Corp. v. State Farm Fire & Cas. Co.*, 2021 WL 1143513 (N.D. Ill. Mar. 25, 2021) (citing Fed. R. Civ. P. 12(f)). "Generally, motions to strike are disfavored because they are considered drastic remedies." *Woodson v. Cook County Sheriff*, 1996 WL 604051, at *5 (N.D. Ill. Oct. 18, 1996); *Tucker Firm, LLC v. Alise*, 2012 WL 252790, at *2 (N.D. Ill. 2012). Motions to strike "should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action." *Volling v. Antioch Rescue Squad*, 999 F. Supp. 2d 991, 1007 (N.D. Ill. 2013). "The court will not strike a matter from a pleading unless it is clear that it can have no possible bearing on the subject matter of the litigation." *Anderson v. Bd. of Educ. of Chi.*, 169 F. Supp. 2d 864, 867–868 (N.D. Ill. 2001).

SWA has not (and cannot) meet its burden to show that such a drastic remedy is warranted. Defendant makes no effort to prove that the collective allegations in question "have no possible relation or logical connection to the subject matter of the controversy." *Volling*, 999 F. Supp. 2d at 1007. This makes sense – Plaintiff's collective allegations are directly related and cannot be removed from the core controversy. The complaint makes clear that Saxon and other employees are similarly situated, and thus conditional certification as an FLSA collective action is warranted. The fundamental issue, for Saxon and all other similarly-situated ramp supervisors, is whether Defendant maintained a corporate policy and practice of requiring them to work before the start of their scheduled shifts each day without compensation and through their meal breaks, despite SWA automatically deducting a 30-minute unpaid meal break each day, is a violation of the FLSA. *See* Dkt. No. 1 at ¶¶ 1–4. Further, Defendant will not suffer any prejudice from continuing the litigation

14

as a putative collective; notably, SWA fails to assert any reasons to the contrary, as it is free to oppose conditional certification on the merits. But Plaintiff and the putative collective she seeks to represent will suffer prejudice should the Court strike her collective allegations because she will lose the ability to show conditional certification is warranted, thereby eliminating any possibility the putative collective could receive notice or an opportunity to vindicate their rights in this Action.

At its core, whether Plaintiff can maintain her collective claims is an issue to be litigated at conditional certification, and not at the pleading stage. *See e.g.*, *Dae Sub Choi v. Sushi Maru Express Corp.*, 2018 WL 5630760, at *3 n.2 (D.N.J. Oct. 30, 2018) (declining to address whether plaintiff's employment contract waived the ability to participate in class-action suits before class certification). Defendant puts forth several cases from outside this Circuit and District it claims stand for the proposition that Saxon's collective claims must be stricken. But each is distinguishable. In *Bailey v. Vulcan Materials Co.*, 2021 WL 5860743 (N.D. Ga. Nov. 16, 2021), the defendant brought a motion to dismiss and/or strike simultaneously and did not waive its argument like Defendant here. The court dismissed the collective action claims after analyzing the case under Rule 12(b)(6) and is therefore inapplicable. Here, the Defendant's Rule 12(f) Motion to Strike is governed by an entirely different standard that was not at issue in *Bailey*. In *Vaugh v. Pittsburgh Fondue, LLC*, 2021 WL 2952902 (W.D. Pa. July 14, 2021), the court dismissed collective and class claims after analyzing the case under Rule 23(d)(1)(D). But as discussed above, Rule 23(d)(1)(D) is not applicable here. In *Castellanos v. Raymours Furniture Company, Inc.,* 291 F. Supp. 3d 294 (E.D.N.Y. 2018), the plaintiffs did not oppose defendant's request to compel arbitration on an individual basis. In *Martin v. CB Rest. Inc.*, 2021 WL 2701952 (W.D. Tex. Mar. 12, 2021), the defendants brought a motion to compel arbitration simultaneously with a motion to strike class or collection action claims and therefore, unlike SWA, did not waive the

15

right to do so. Lastly, in *Camilo v. Uber Techs., Inc*., 2018 WL 2464507 (S.D.N.Y. May 31, 2018), the court upheld an arbitration agreement under the FAA that included a class action waiver. In contrast, the Supreme court held Plaintiff and all other ramp supervisors were exempt from the FAA.

Finally, it is worth noting that Defendant cites two cases in support of its suggestion that "[c]ourts in this District strike class allegations under Rule 12(f) when they are facially deficient, or when it is otherwise clear early on in the litigation that the class claims cannot proceed." Dkt. No. 73 at 4. But the decisions Defendant cites are inapposite because both involved motions to strike class allegations under Rule 23(d)(1)(D). *See Connectors Realty Group Corp.,* 2021 WL 1143513, at *3 (granting motion to strike class action allegations under Rule 23(d)(1)(D) because the class definition was overbroad as it included a significant number of potential class members who had not suffered injury or harm); *Jones v. BRG Sports, Inc*., 2019 WL 3554374, at *4 (N.D. Ill. Aug. 1, 2019) (granting motion to strike under Rule 23(d)(1)(D) without mention of Rule 12(f)). Regardless of Defendant's procedural machinations, this Court should decline to strike Plaintiff's collective action allegations at this early pleading stage.

### D. The Viability Of The FLSA Collective Is Not Properly Before The Court.

Finally, Defendant pre-emptively asserts that Plaintiff will not be able to meet the lenient "similarly situated" standard for conditional certification of an FLSA collective. *See* Dkt. No. 73 at 7. While Defendant's argument largely re-hashes its disagreement with the Supreme Court's decision in this matter, it is worth noting that nothing in the Supreme Court's decision hinders or alters the "similarly situated" analysis for conditional certification. Defendant suggests that "[t]he problem with Plaintiff's proposed collective class is that determining who is 'similarly situated' requires a state-by-state, location-by-location, and individual-by-individual analysis of the

16

enforceability of each Ramp Supervisor's agreement to arbitrate." *Id*. However, as the Seventh Circuit ruled, a defendant is required "to show the existence and validity of an arbitration agreement for each employee it seeks to exclude from receiving notice… ." *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1050–51 (7th Cir. 2020). Furthermore, this argument is irrelevant to Defendant's liability. To the contrary, a single suit against Defendant is the only mechanism that is capable of providing relief to the collective as a whole.

As alleged in the Complaint, SWA engaged in a common course of conduct that affected the entire collective the same way: it maintained a corporate policy and practice of requiring its ramp supervisors, regardless of in what state they were employed, to work before the start of their scheduled shifts each day without compensation and through their meal breaks, despite Defendant automatically deducting a 30-minute unpaid meal break each day, in violation of the FLSA. *See* Dkt. No. 1 at ¶¶ 1–4; *see also* Exhibit 3, Saxon Declaration, ¶¶ 5, 18–19. Thus, a large number of people have relatively small-dollar-value claims; precisely the type of situation for which a collective action is supposed to provide redress. *See Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997) (finding that requiring individual actions would undermine purpose of statute). Defendant's bald theory that it is impossible to litigate this matter in one case is little more than a plea to insulate Defendant from the vast number of employees whose rights it violated.

Plaintiff needs to only make "a modest factual showing sufficient to demonstrate that [she] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003) (citation omitted). This showing "is not a stringent standard; a plaintiff need only demonstrate a factual nexus that binds potential members of a collective action together." *Girolamo v. Comm. Physical Therapy & Assoc., Ltd, et al.*, 2016 WL 3693426, at *3 (N.D. Ill. July 12, 2016) (internal quotation omitted).

17

It does not make sense to strike collective allegations from a complaint where the definition of the collective can be amended, or subclasses added, to address any *actual* issues, rather than Defendant's alarmist speculation. A collective action is the superior method of managing this litigation because it allows plaintiffs with relatively small claims to assess Defendant's liability in one fell swoop. Defendant's belief that it can defeat that central purpose of the collective action mechanism—and do so right at the pleading stage of a case that alleges a straightforward, common course of conduct like this—is ill-founded. Whether Plaintiff will be able to maintain her collective action is an issue to be decided at the conditional certification stage, not now. Defendant has not raised any facial reason that collective action allegations should be stricken, and its motion must be denied.

### III.    CONCLUSION

For the foregoing reasons, Plaintiff, on behalf of herself and all other similarly-situated individuals, respectfully requests that this Court deny Defendant's Renewed Motion to Strike.

Date:   August 16, 2022

Respectfully Submitted,

*/s/ Andrew C. Ficzko*
Ryan F. Stephan
James B. Zouras
Andrew C. Ficzko
**STEPHAN ZOURAS, LLP**
100 N. Riverside Plaza
Suite 2150
Chicago, Illinois 60601
312.233.1550
312.233.1560 *f*
rstephan@stephanzouras.com
jzouras@stephanzouras.com
aficzko@stephanzouras.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I, the attorney, hereby certify that on August 16, 2022, I filed the attached with the Clerk of the Court using the electronic filing system which will send such filing to all attorneys of record.

*/s/ Andrew C. Ficzko*