IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LATRICE SAXON, individually, and on behalf of all others similarly situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>SOUTHWEST AIRLINES CO., )<br><br>Defendant. ) | Case No. 1:19-cv-00403<br><br>Honorable Robert M. Dow Jr. |

**PLAINTIFF'S REPLY IN SUPPORT OF HER RENEWED MOTION
TO EQUITABLY TOLL THE STATUTE OF LIMITATIONS
FOR ALL PUTATIVE MEMBERS OF THE FLSA COLLECTIVE ACTION**

In its Response in Opposition to Plaintiff's Renewed Motion to Equitably Toll the Statute of Limitations (Dkt. No. 79), Defendant attempts to oversimplify and mischaracterize the Supreme Court's holding as well as Plaintiff's arguments in favor of tolling the statute of limitations for potential opt-in plaintiffs' Fair Labor Standards Act ("FLSA") claims. Plaintiff filed this FLSA lawsuit on behalf of herself and all other similarly-situated ramp supervisors to redress Defendant's uniform policy and practice of failing to pay them hard-earned overtime compensation. The statute of limitations under the FLSA is two years, or three years for willful violations. *See* 29 U.S.C. § 255(a). Despite Defendant's suggestion otherwise, this case does not constitute run-of-the-mill delay inherent in all FLSA matters. Given that the statute of limitations is currently running for potential opt-in plaintiffs, the unique procedural posture in this matter demonstrating extraordinary circumstances, and Plaintiff's diligent pursuit not only of her rights, but the rights of hundreds of putative collective members, equitable tolling is clearly warranted. Absent tolling of the statute of limitations, the claims of potential opt-in plaintiffs are diminishing or being extinguished outright.

Fortunately, this Court, in its discretion, can prevent this unjust result by equitably tolling the statute of limitations to allow potential collective members to opt-in to this lawsuit. Accordingly, Plaintiff respectfully seeks an order tolling the FLSA statute of limitations only from when Plaintiff filed her Notice of Appeal on November 5, 2019, until the Court rules on Defendant's two pending motions. *See* Dkt. Nos. 33, 70, 72.

## I. EQUITABLE TOLLING IS APPROPRIATE BECAUSE EXTRAORDINARY CIRCUMSTANCES EXIST, AND PLAINTIFF HAS ACTED DILIGENTLY.

### A. The Unique Procedural Posture of this Case Presents Extraordinary Circumstances.

In its Response, Defendant fails to recognize the distinctions made in Plaintiff's Motion between regular procedural delay and the delay that resulted from the extraordinary circumstances unique to this case. Courts in this District have held that equitable tolling is warranted where, as here, the procedural posture of the matter causes delay in the filing of a conditional certification motion. *See Pfefferkorn v. PrimeSource Health Grp., LLC*, 2019 WL 354968, at *8 (N.D. Ill. Jan. 29, 2019) (holding that equitable tolling was warranted for opt-in plaintiffs who have yet to join, "[g]iven the procedural history of [the] case and the fact that the statute of limitations continues to run for opt-in plaintiffs"); *see also Hunter v. WirelessPCS Chicago LLC*, 2022 WL 864533, at *12 (N.D. Ill. Mar. 23, 2022) (granting equitable tolling, holding that plaintiffs could not pursue a motion for certification while the case was stayed pending settlement negotiations, preventing putative opt-in plaintiffs from receiving notice, and noting the circumstances were out of their control); *Clendenen v. Steak N Shake Operations, Inc.*, 2018 WL 4679728, at *4 (E.D. Mo. Sept. 28, 2018) (granting equitable tolling as a result of a delay resulting from the transfer of the case, noting "granting motions filed by named plaintiffs to equitably toll the statute of limitations for potential opt-in plaintiffs is not uncommon"); *Abrams v. City of Albuquerque*, 2014 WL 11497810,

at *11 (D.N.M. June 26, 2014) (granting equitable tolling and finding procedural delay was sufficiently protracted to be considered an "extraordinary circumstance"). Defendant characterizes the unique litigation posture along with the unprecedented COVID-19 global pandemic as merely an ordinary course of events, not amounting to extraordinary circumstances. *See* Dkt. No. 79 at 5-8. Defendant could not be more wrong. Defendant's view would ignore the Supreme Court's admonition that the benefits of a collective action depend on distribution of timely notice. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (finding that the benefits of a collective action "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate"). The Court's decision to apply equitable tolling is highly dependent on the unique facts of the case and "courts are expected to employ 'flexible standards on a case-by-case basis.'" *Socha v. Boughton*, 763 F.3d 674, 684 (7th Cir. 2014) (citation omitted); *see also Calloway v. AT&T Corp.*, 419 F. Supp. 3d 1031, 1034 (N.D. Ill. 2019) (the applicability of equitable tolling is highly dependent on the facts unique to the case). The unique circumstances here clearly warrant this Court to use its discretion and grant Plaintiff's Motion.

      First, the procedural posture of this case could not be any more "extraordinary," ultimately preventing others from learning of their rights or joining this action. Filed in 2019, Plaintiff is still in the same procedural position as she was over three-and-a-half years ago – at the pleading stage. Plaintiff only seeks to equitably toll the statute of limitations beginning when she filed her notice of appeal on November 5, 2019, until the Court rules on Defendant's two pending motions. An appeal to the Seventh Circuit – much less reversal on appeal – is not a typical course of litigation. For example, in 2019, there were 10,093 cases filed in the District Court for the Northern District of Illinois, but only 2,629 (or approximately 26%) appeals filed with the Seventh Circuit *in total*.

*See* Caseload Stats, 2010-2019.[1] Even rarer are cases that proceed to the United States Supreme Court. During the relevant period, the Supreme Court heard only 68 total cases, with only four cases coming from the Seventh Circuit, including this case.[2] That is exactly the procedural posture here. Plaintiff appealed to the Seventh Circuit, won,[3] and was also victorious at the Supreme Court level. As a result of her victories on appeal, the Supreme Court affirmed the judgment of the Seventh Circuit and held that Plaintiff and all other similarly-situated SWA ramp supervisors (*i.e.,* "airplane cargo loaders"), whose duty is to load and unload interstate cargo, are engaged in commerce and considered transportation workers whose contracts of employment are exempted from the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*,[4] paving the way for herself and other aggrieved putative collective members to receive vindication of their FLSA rights through the courts. *SW Airlines Co. v. Saxon*, 142 S. Ct. 1783 (2022). Before these decisions, ramp supervisors were under the mistaken belief they were subject to the FAA and could pursue their

---

[1] https://ballotpedia.org/United_States_District_Court_for_the_Northern_District_of_Illinois; https://ballotpedia.org/United_States_Court_of_Appeals_for_the_Seventh_Circuit

[2] https://ballotpedia.org/Supreme_Court_cases,_October_term_2021-2022

[3] Making matters still more extraordinary, oral argument was held on two different occasions due to the appointment of Justice Barrett to the Supreme Court, who was a member of the panel for the first argument before the Seventh Circuit but was appointed before a decision was made.

[4] Defendant's suggestion that the "Supreme Court's holding is limited to Plaintiff" is absurd. Dkt. No. 79 at 2. The Supreme Court clearly notes, "[t]he question presented is whether, under § 1 of the [FAA], [Saxon] belongs to a 'class of workers engaged in foreign or interstate commerce' that is exempted from the Act's coverage. We hold that she does[,]" "Saxon is therefore a member of a 'class of workers' based on what she does at Southwest," "Saxon belongs to a class of workers who physically load and unload cargo on and off airplanes on a frequent basis[,]" "[a]irplane cargo loaders are such a class[,]" "[c]argo loaders exhibit this central feature of a transportation worker[,]" "[w]orkers, like Saxon, who load cargo on and off airplanes belong to a 'class of workers in foreign or interstate commerce[,]'" "[h]ere, § 1's plain text suffices to show that airplane cargo loaders are exempt from the FAA's scope," and "Latrice Saxon frequently loads and unloads cargo on and off airplanes that travel in interstate commerce. She therefore belongs to a 'class of workers engaged in foreign and interstate commerce' to which § 1's exemption applies." *SW Airlines Co.*, 142 S. Ct. at 1787-90, 1792-93. Regardless of location, SWA ramp supervisors' duties and responsibilities are the same: loading and unloading cargo on and off SWA airplanes multiple times each week. *See* Dkt. No. 82-1, ¶¶ 16-19.

legal rights only in arbitration, preventing them from opting-in here or from filing their own lawsuit in court.[5]

Next, there should be no doubt the global COVID-19 pandemic and its effects on the day-to-day function of society—let alone the courts—also factors into the analysis. The COVID-19 shutdowns affected every facet of life, including the judicial system. Despite initiating the appeal in November 2019, the second oral argument was not heard until March of 2021. The global pandemic clearly must have compounded the time for this case to proceed through the appellate process, and this Court would not be the first to grant equitable tolling of the statute of limitations because of the unique delays caused by the pandemic.[6]

Finally, Defendant continues to delay the proceedings with motions that were waived and now considered moot,[7] preventing Plaintiff from moving forward with a motion for conditional certification and informing putative collective members of their right to proceed on a collective

---

[5] Defendant also proposes that Plaintiff "signed a valid, enforceable collective action waiver" and therefore "never had the right to bring this lawsuit on behalf of anyone, and no one else should be 'opting in' because all other Ramp Supervisors have signed collective action waivers as well." Dkt. No. 79 at 5. Defendant's assertion is incorrect, and Plaintiff addresses exactly why this is wrong in her Response in Opposition to Defendant's Renewed Motion to Compel Arbitration as well as in her Opposition in Response to Defendant's Renewed Motion to Strike Collective Action Allegations. *See* Dkt. Nos. 82, 83. This is just another example of Defendant providing collective members with false information in an attempt to prevent them from pursing their collective rights. And, Defendant's reference to six other ramp supervisors "represented by Plaintiff's same counsel" resolving their FLSA claims through individual arbitration is misleading. Dkt. No. 79 at 6, 12 (emphasis in original). Defendant is well aware, but conveniently fails to mention, that the parties agreed if their FLSA matter was not resolved during mediation, which it wasn't, those six ramp supervisors (and those six ramp supervisors only) would ***voluntarily*** dismiss the matter and proceed in individual arbitration.

[6] *See Statute of Limitations Quick Guide (During COVID-19 Pandemic)*, US Law Network, Inc. (Dec. 2020).

[7] On the same day Plaintiff filed her initial motion for equitable tolling, Defendant filed a [second] motion to dismiss in favor of arbitration and a motion to strike collective action allegations. *See* Dkt. Nos. 52, 54. Thereafter, three-and-a-half years after Plaintiff filed her complaint, Defendant filed a renewed [third] motion to dismiss in favor of arbitration and a renewed [second] motion to strike collective action allegations. *See* Dkt. Nos. 70, 72.

basis in the courts. Exploiting the rules of civil procedure, Defendant has filed multiple motions—all of which raise arguments that were available to it but omitted from its first motion to dismiss in favor of arbitration—in violation of Rule 12(g)(2), Rule 12(h)(1)(A), and subject to the waiver doctrine.[8] Thus, Defendant continues to add to the case's unique procedural posture by now improperly attempting at least a third bite of the apple, further delaying the proceedings of this case by arguing moot issues. Extraordinary circumstances plainly exist.

### B. Plaintiff Acted Diligently by Promptly Challenging and Prevailing on Her Appeal, Prevailing at the Supreme Court Level, and Paving the Way for Others to Pursue Their Rights in Court.

Defendant is (partially) correct that Plaintiff has focused on demonstrating her own diligence in moving to toll the statute of limitations to prevent the extinguishment of claims of potential collective members. *See* Dkt. No. 79 at 3-5. What Defendant fails to acknowledge, however, is that when Plaintiff filed the lawsuit back in 2019, the operative alternative dispute resolution ("ADR") agreement provided that the FAA applied to all disputes, implying ramp supervisors were not exempt from its coverage and therefore, would be forced to proceed in arbitration rather than court. However, as both the Seventh Circuit and the Supreme Court held, Plaintiff and other ramp supervisors are "transportation workers" engaged in interstate commerce, who are exempt from its coverage. Despite taking three-and-a-half years, Plaintiff has confirmed her position was correct and that she and other ramp supervisors may pursue their unpaid wage claims in court. Unless ramp supervisors monitor the Seventh Circuit and Supreme Court dockets, putative collective members would not know they are free to exercise their legal rights through the court system if they choose, preventing them from seeking out this avenue whether on an individual or collective basis, based on Defendant's [mis]representations in its ADR agreements.

---

[8] Plaintiff explains why Defendant waived these arguments in her respective responses to Defendant's two pending motions. *See* Dkt. Nos. 82, 83.

*See Owen v. West Travel, Inc.,* 2004 WL 7341675, at *2 (W.D. Wash. Nov. 10, 2004) (denying defendant's motion for summary judgment on equitable tolling and noting that equitable tolling "applies where the employer's acts or omissions have lulled the plaintiff into foregoing prompt attempts to vindicate her rights"). Potential opt-in plaintiffs here should not be punished for Defendant's misrepresentations. *See Ellicott v. Am. Cap. Energy, Inc.,* 906 F.3d 164, 171 (1st Cir. 2018) (affirming equitable tolling of wage claims when defendant affirmatively misled the plaintiff about wage violations).

Defendant argues that because six other SWA ramp supervisors have litigated their FLSA violations, "[t]hese other proceedings demonstrate that Ramp Supervisors are aware of any purported wage claims against Southwest." Dkt. No. 79 at 12. Defendant further suggests that "[s]upervisory employees know or should know that if they are 'required' to arrive early or work through their meal break … they have wage claims." *Id.* This argument fails because "[c]ourts do not attribute constructive knowledge of a pending FLSA lawsuit to putative plaintiffs." *Davenport v. Charter Communications, LLC,* 2014 WL 2993739, at *7 (E.D. Mo. July 3, 2014) ("That some employees learned of and joined the suit before notice of conditional certification does not mean that other putative plaintiffs should be charged with knowledge of the suit and the obligation to affirmatively opt-in before notice."); *see also Bergman v. Kindred Healthcare, Inc.,* 949 F. Supp. 2d 852, 861 (N.D. Ill. 2013) (rejecting the argument that potential putative collective members could have filed their own lawsuit or opted into a collective action without receiving notice because it "ignores the realities of FLSA" and would "go against ever applying equitable tolling to a potential opt-in"); *Kutzback v. LMS Intellibound, LLC*, 233 F. Supp. 3d 623, 630 (W.D. Tenn. Feb. 10, 2017) (rejecting defendant's argument that equitable tolling was not appropriate because potential opt-in plaintiffs had actual notice of the facts and circumstances of their employment that

7

form the basis of their FLSA claims); *Thompson v. Direct General Consumer Prods., Inc.*, 2014 WL 884494, at *9 (M.D. Tenn. Mar. 5, 2014) (the mere existence of a law is not enough to give putative opt-in plaintiffs constructive notice of their claims since such a position would obviate the need to send notice to potential opt-in plaintiffs in the first place).

Defendant also suggests that potential opt-in plaintiffs' failure to join this action or file their own private lawsuit is evidence of their lack of diligence, even though the potential opt-in plaintiffs have not yet received notice of the litigation or their claims. Dkt. No. 79 at 4-5. This argument has likewise been widely rejected. *Lucas v. JJ's of Macomb*, 321 F. Supp. 3d 882, 888 (C.D. Ill. 2018) (rejecting argument that putative opt-in plaintiffs could have brought their own claims or joined the suit prior to receiving notice, holding that where putative plaintiffs have not received notice because the court has not yet conditionally certified a class, the ignorance of potential opt-in plaintiffs "is a reasonable result of the unique procedural posture" of the case); *Thompson*, 2014 WL 884494, at *8 (granting equitable tolling and rejecting defendant's argument that putative opt-in plaintiffs were not diligent about their rights because they did not bring their own lawsuit); *Bergman v. Kindred Healthcare, Inc.*, 949 F. Supp. 2d 852, 861 (N.D. Ill. 2013) (granting equitable tolling and rejecting defendants' argument that potential opt-ins could have joined or brought their own lawsuit); *Stransky v. HealthONE of Denver, Inc.*, 868 F. Supp. 2d 1178, 1182 (D. Colo. 2012) (citing *Baden-Winterwood v. Life Time Fitness*, 484 F. Supp. 2d 822, 828 (S.D. Ohio 2007)) (rejecting defendant's argument that putative opt-in plaintiffs failed to exercise diligence because they didn't file their own separate lawsuits).

Contrary to Defendant's assertion, Plaintiff's own diligence *is* relevant. Plaintiff has diligently pursued her rights and properly managed her duties as the representative Plaintiff, including filing a timely appeal and securing favorable Seventh Circuit and Supreme Court rulings,

keeping the door open for herself and other aggrieved putative collective members to receive vindication under the FLSA through the courts. This Court should consider the unique circumstances of this case as a whole and grant Plaintiff's Motion.

Defendant cites and relies heavily on the decision in *Soto v. Wings 'R US Romeoville, Inc.*, 2016 WL 4701444 (N.D. Ill. Sept. 8, 2016). Unlike *Soto*, and the other decisions cited by Defendant, this case presents a unique procedural posture that warrants equitable tolling of the statute of limitations. For example, in *Soto, Sylvester, Perez,* and *Nicks,* the plaintiffs were not required to proceed with appeals to both the Seventh Circuit and the Supreme Court lasting almost three-and-a-half years to prove putative collective members may exercise their wage rights in the courts, much less while simultaneously dealing with a global pandemic that slowed day-to-day proceedings of society, including judicial proceedings. *See Soto*, 2016 WL 4701444; *Sylvester v. Wintrust Fin. Corp.*, 2014 WL 10416989 (N.D. Ill. Sept. 26, 2014); *Perez v. Comcast*, 2011 WL 5979769 (N.D. Ill. Nov. 29, 2011); *Nicks v. Koch Meat Co.*, 265 F. Supp. 3d 841 (N.D. Ill. 2017). Furthermore, the plaintiffs in the majority of these cases sought to toll the statute of limitations pending a ruling on their motion for conditional certification, something Plaintiff has not been afforded the opportunity to bring given the litigation posture to date. *See Soto*, 2016 WL 4701444, at *1; *Perez*, 2011 WL 5979769, at *1; *Nicks*, 265 F. Supp. 3d at 844; *see also Pfefferkorn,* 2019 WL 354968, at *8 (denying initial motion for conditional certification as premature, instructing plaintiffs that it would not rule on any conditional certification request until the final pleadings were on file and the court ruled on defendants' motions to dismiss); *Hunter*, 2022 WL 864533, at *12 (given the procedural posture, plaintiffs could not pursue their certification motion and, as a result, "putative opt-in plaintiffs did not receive notice of the action, and these circumstances were beyond their control"). The decision to deny the requests for equitable tolling in *Soto*, *Sylvester*,

9

*Perez,* and *Nicks* was based on the plaintiffs' failure to show that equitable tolling was warranted because each failed to demonstrate that extraordinary circumstances prevented putative collective members from filing a lawsuit of their own or joining a pending lawsuit. The facts of this case are patently different, and they are "extraordinary circumstances" warranting equitable tolling.

### C. Plaintiff's Motion Does Not Require the Court to Render an Advisory Opinion.

Defendant mistakenly argues that Plaintiff's Motion must be outright denied because it would require the Court to render an advisory opinion about persons not currently before the Court. *See* Dkt. No. 79 at 9. Multiple courts have rejected this argument.[9] *See e.g., Watt v. Fox Rest. Venture, LLC,* 2019 WL 698058, at *7 (C.D. Ill. Feb. 20, 2019) (citing *Lucas*, 321 F. Supp. 3d at 890) (granting equitable tolling and denying the argument that doing so constituted an advisory opinion, holding that the plaintiff could assert the rights of the putative opt-in third parties because they shared a close relationship and common interest); *Clendenen,* 2018 WL 4679728, at *4 (granting equitable tolling and denying defendant's argument that plaintiff lacked standing to seek equitable tolling on behalf of the putative opt-in plaintiffs). And while Defendant may be correct that federal courts do not have the power to resolve legal questions that do not arise out of an actual dispute between real parties, Defendant misconstrues the unique procedural posture here that warrants equitable tolling, even for those who have not yet joined the case. *See Pfefferkorn,* 2019 WL 354968, at *8 (tolling the statute of limitations for collective members who have not yet opted into the case); *see also Bergman*, 949 F. Supp. 2d at 860 (holding the long delay in ruling on pending motions should not cause potential plaintiffs to lose out on the possible benefits of the

---

[9] "[A] litigant can assert the rights of third parties such as a request to toll the statute of limitations as to the putative plaintiffs if three conditions are met: 1) the plaintiff has an injury in fact; 2) there was some hindrance to the third parties in asserting their own rights; and 3) the plaintiff shares a close relationship to the third parties." *Lucas*, 321 F. Supp. 3d at 890 (citing *Campbell v. Louisiana*, 523 U.S. 392, 397 (1998)).

lawsuit, particularly because the delay occurred through no fault of the existing or potential plaintiffs). While Plaintiff has moved for tolling before she has moved for and the Court has ruled on a motion for conditional certification, she recognizes that the Court may not address whether tolling is appropriate before ruling on whether to authorize notice to potential collective members. Given this reality, in the alternative, the Court should enter and continue the Motion until it has authorized notice and collective members have opted into the case. At that point, the Court can render a decision that will apply to individuals who have joined the lawsuit, and no others.

## II. CONCLUSION

For the reasons set forth above, Plaintiff Latrice Saxon respectfully requests that this Court exercise its discretion and enter an order granting her Motion and equitably tolling the statute of limitations for putative collective members from November 5, 2019, until the Court rules on Defendant's pending renewed motion to compel arbitration and its renewed motion to strike collective action allegations. In the alternative, Plaintiff requests that the Court enter and continue the Motion until it has authorized notice and collective members have opted into the case.

Date: September 6, 2022

Respectfully Submitted,

*/s/ Andrew C. Ficzko*
Ryan F. Stephan
James B. Zouras
Andrew C. Ficzko
**STEPHAN ZOURAS, LLP**
100 N. Riverside Plaza
Suite 2150
Chicago, Illinois 60606
312.233.1550
312.233.1560 *f*
rstephan@stephanzouras.com
jzouras@stephanzouras.com
aficzko@stephanzouras.com

**ATTORNEYS FOR PLAINTIFF**

11

**CERTIFICATE OF SERVICE**

    I, the attorney, hereby certify that on September 6, 2022, I filed the attached with the Clerk of the Court using the electronic filing system which will send such filing to all attorneys of record.

                                                           */s/ Andrew C. Ficzko*