**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LATRICE SAXON, Individually, and on Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:19-cv-00403 |
| v. | ) ) | |
| SOUTHWEST AIRLINES CO., | ) ) | Honorable Robert M. Dow, Jr. |
| Defendant. | ) ) | |

**SOUTHWEST'S REPLY IN SUPPORT OF ITS**
**RENEWED MOTION TO COMPEL ARBITRATION**

Plaintiff Latrice Saxon has signed valid agreements to arbitrate disputes with her employer, Southwest Airlines Co. ("Southwest"). Dkt. 71-1, Vasquez Decl. at ¶¶ 8-12, Exs. 1-4.[1] Plaintiff continues to attempt to evade her obligations under her agreement (the "ADR Program" or "ADR Agreement"). Plaintiff's agreement is enforceable, and her wage-and-hour claims under the Fair Labor Standards Act ("FLSA") must be arbitrated.

**I.     Southwest Did Not "Waive" Enforcing Plaintiff's ADR Agreement.**

Since its initial responsive pleading in April 2019, Southwest has contended that Plaintiff must individually arbitrate her purported FLSA claims. In response to Southwest's motion to dismiss or stay in favor of arbitration (Dkt. 13), Plaintiff sought discovery, resulting in the following June 2019 Order from the Court: "[T]he Court directs that discovery and briefing on the sole issue presently ripe for decision the applicability of Section 1 of the FAA" proceed on this "limited issue for decision." Dkt. 26 (emphasis added). The Court then dismissed the case on this limited issue. Dkt. 30. Plaintiff successfully appealed on the limited issue, the narrow focus of

---

[1] Exhibit citations refer to the exhibits attached to Southwest's Memorandum of Law in Support of its Motion to Compel Arbitration (Dkt. 71).

which was made clear by the Seventh Circuit: "All we decide today is that the Federal Arbitration Act's policy favoring arbitration does not extend to Saxon's contract of employment under the plain text of § 1." *Saxon v. Southwest Airlines Co.*, 993 F.3d 492, 502 (7th Cir. 2021). The Supreme Court, in turn, affirmed this narrow holding that the FAA did not apply to Plaintiff's ADR Agreement. *Southwest Airlines Co. v. Saxon*, 142 S. Ct. 1783, 1793 (2022).

No Court has ever held that Southwest now cannot litigate the other issues ripe for decision, including whether Plaintiff's ADR Agreement is an otherwise enforceable contract under state law. Indeed, the Seventh Circuit foresaw such an outcome, noting that "Saxon could still face arbitration under state law." *Saxon*, 993 F.3d at 502 (emphasis added). And as common sense would dictate, "if federal law does not govern the arbitrability of [a] contract, some law must." *Harper v. Amazon.com Servs., Inc.*, 12 F.4th 287, 294 (3d Cir. 2021) (emphasis original). The Court need look no further than Plaintiff's own ADR Agreement for the applicable law – the law of the state of Plaintiff's primary work location (Midway Airport, located in Illinois) will apply if a Court deems the FAA inapplicable. Dkt. 71-1, Vasquez Decl., Ex. 1, p.1.

Plaintiff's argument that Southwest has somehow waived its ability to enforce Plaintiff's ADR Agreement under Federal Rule of Civil Procedure 12 ignores the procedural history of the case, the positions Southwest has taken, and the terms of the contract itself. Rule 12 serves no purpose here, when Southwest has always contended that Plaintiff's ADR Agreement requires her to individually arbitrate her wage claims. *See* Fed. R. Civ. P. 12(b); 12(g)(2); 12(h)(1)(A) (party only waives a Rule 12(b)(2)-(5) defense by "omitting it from a motion in the circumstances described in Rule 12(g)(2)").

It bears noting that Rule 12 is a procedural rule, not a substantive one, and Plaintiff's "[p]rocedural posturing is nothing new in the federal forum." *See Carelogistics, LLC v. Catholic*

*Health Partners*, No. 1:13-cv-1929-WBH, 2014 WL 12543912, at *2 (N.D. Ga. July 30, 2014). As in *Carelogistics*, the form of a motion to compel arbitration is irrelevant, and such motions can be granted even if they are arguably successive, or raise arguments in favor of arbitration that were not previously raised. *Id*. at *4 (rejecting plaintiff's argument that Rule 12 prevented successive motion to enforce arbitration agreement, noting that Rule 12 provides multiple bases for permitting such a motion). There is precedent for this Court to decide Southwest's motion to compel arbitration via multiple procedural rules, including Rule 12(c), and even under Rule 56. *See id.* at *2 (collecting cases).

Regardless, Rule 12(g)(2) should not be applied in the manner Plaintiff proposes, because, "the objective of Rule 12(g)(2) is to eliminate unnecessary delay . . . [and determining] whether an action is subject to arbitration certainly advances the cause of judicial efficiency." *Id.*; *see also Motta & Motta LLC v. Lawyers 777, LLC*, No. 18-cv-5811, 2020 WL 1433816, at *3 (N.D. Ill. Mar. 24, 2020) (overruling a procedural Rule 12 objection because "courts regularly and properly use their discretion").

## II.    Plaintiff's ADR Agreement Should Be Enforced Under State Law.

Lost in Plaintiff's procedural posturing is the hard fact that Southwest is entitled – and indeed has been encouraged – to enforce its ADR Agreement under state law, without relying on any federal procedural rule. *See Saxon*, 993 F.3d at 502. Southwest has done so by seeking to enforce its arbitration agreement with Plaintiff under the Illinois Uniform Arbitration Act ("IUAA") as an otherwise enforceable contract. Dkt. 52-53; 70-71.

The Third Circuit has provided important guidance in situations where the FAA's "transportation worker" exemption may impact an individual arbitration agreement, holding that courts should consider both federal and state enforcement mechanisms at the earliest possible stage

in the litigation. *Harper*, 12 F.4th at 296-97. *Harper* instructs if "the § 1 exclusion applies, then

the FAA does not. But the parties still have an agreement to arbitrate, and if federal law does not

govern the arbitrability of their contract, some law must." *Id.* at 294-95 (emphasis added). As

*Harper* aptly notes, "[a]fter all, the parties' primary agreement is to arbitrate their disputes, so

courts should explore both contractual routes to effectuate that agreement when one is called into

question." *Id.* at 296.

      Here there is no question what other law must apply. Plaintiff's signed ADR Agreement

provides "[t]o the extent the FAA is deemed not to apply . . . this Agreement shall be enforceable

under the law of the State of your primary work location." Dkt. 71-1, Vasquez Decl., Ex. 1, p. 1.

Even if it did not contain such language, the ADR Agreement would otherwise be enforceable

under state law. *Harper*, 12 F.4th 294-97. *Harper* is entirely consistent with Seventh Circuit

authority and fellow district judges' opinions. *See* Dkt. 71 at 3-7; *Sherwood v. Marquette Transp.*

*Co.*, 587 F.3d 841, 843 (7th Cir. 2009) ("provisions for alternative dispute resolution may be

enforced as contracts under state law, even if the provisions are outside of the Federal Arbitration

Act's scope"); *Atwood v. Rent-A-Center East, Inc.*, No. 15-cv-1023, 2016 WL 2766656, at *3

(S.D. Ill. May 13, 2016) (compelling arbitration even though FAA did not apply because plaintiff

"did agree to arbitrate this dispute" and arbitration could be enforced "through another vehicle

(like state law)").

      For these same reasons, Plaintiff's more general waiver argument fails. Southwest has

never "acted inconsistently with its right to arbitrate." Dkt. 82 at 9 (citing *Schroeder Murchie Laya*

*Assocs. v. 1000 W. Lofts, LLC*, 746 N.E.2d 294, 301 (Ill. App. 1st Dist. 2001)). Moreover,

Southwest has never "substantially invoke[d] the judicial process." Dkt. 82 at 9. To the contrary,

Southwest has argued from the outset of this litigation that Plaintiff's claims must proceed in

individual arbitration. The authority upon which Plaintiff relies is distinguishable. In *Oliveira v. New Prime, Inc.*, 424 F. Supp. 3d 206, 213 (D. Mass. 2019), the defendant made "repeated affirmations" that it would not seek to compel arbitration with respect to opt-in plaintiffs under Missouri state law. Even in its Supreme Court brief, the defendant affirmed that it had "not moved to compel arbitration of respondent's claims under Missouri law – and respondent is well aware that [defendant] has <u>no intention</u> of doing so in this case." *Id.* at 212 (emphasis added). That is not the case here.

At the end of the day, Plaintiff signed an enforceable contract to arbitrate her claims; case law says the Court should consider whether the ADR Agreement is enforceable under state law and if so, enforce it. *See supra*; Dkt. 71. Whether the Court elects to compel arbitration as a successive motion, and/or on state law grounds is entirely at the Court's discretion. As Judge Seeger once put it, "a dismissal [in favor of arbitration] by any other name still ends this case." *Crooms v. Southwest Airlines Co.*, 459 F. Supp. 3d 1041, 1051 (N.D. Ill. 2020).

## III.    Southwest's ADR Agreement with Plaintiff is Enforceable.

Illinois public policy favors freedom of contract, judicial enforcement of contracts as written, and a preference for arbitration over litigation. *Tecnomatic, S.p.A. v. Cave*, No. 1-16-1908, 2018 WL 683821, at *11 (Ill. App. 1st Dist. 2018) (collecting cases). Where a valid agreement to arbitrate exists, courts applying Illinois law will enforce it. *Williams v. Jo-Carroll Energy, Inc.*, 890 N.E.2d 566, 569 (Ill. App. 2d Dist. 2008) (citing the IUAA, 710 ILCS 5/2(a)). Federal courts sitting in diversity have reached the same enforceability conclusion. *See Sherwood*, 587 F.3d at 843; *Atwood*, 2016 WL 2766656, at *3.

After having conceded that her ADR Agreement was otherwise enforceable if the FAA's Section 1 exemption did not apply (*Saxon*, 2019 WL 4958247, at *2 ("Plaintiff conceded that she

signed the ADR Agreement"; threshold issue is FAA applicability)), Plaintiff has now changed

course, calling the ADR Agreement "substantively unconscionable." Dkt. 82 at 10. The Court need

not entertain this change in course, but if it is inclined to do so, there are no facts properly before

this Court that meet Plaintiff's high burden of proving that the ADR Agreement is unconscionable.

*See Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 267 (Ill. 2006). Nothing about the ADR

Agreement meets the unconscionability criteria: it is not "so one-sided as to oppress or unfairly

surprise an innocent party;" nor does it reflect "an overall imbalance in the obligations and rights

imposed by the bargain," nor does it create a "significant cost-price disparity." *Id*.

   Plaintiff's stated objections lack merit, and most are not properly before the Court, as they

are within the purview of an arbitrator pursuant to the ADR Agreement. First, Plaintiff takes issue

with the ADR Agreement's discovery parameters, ignoring that "[a] hallmark of arbitration - and

a necessary precursor to its efficient operation - is a limited discovery process." *Matria Healthcare,

LLC v. Duthie*, 584 F. Supp. 2d 1078, 1082 (N.D. Ill. 2008) (citation omitted). This is because

arbitration is "not intended to be equivalent to litigation" and the "rights and procedures that are

common to civil trials, such as discovery . . . are often severely limited or unavailable."

*Tecnomatic, S.p.A.*, 2018 WL 683821, at *10; *Colmar Ltd. v. Fremantlemedia N. Am.*, 801 N.E.2d

1017, 1023 (Ill. App. 1st Dist. 2003) (discovery is "often severely limited or unavailable"); *see

also Brown v. Delfre*, 968 N.E.2d 696, 700 (Ill. App. 2d Dist. 2012) (enforceable arbitration

agreement noted discovery "is generally more limited than and different in form and scope from

discovery typically available in court proceedings"). Put simply, the "suggestion that an arbitration

clause is unconscionable because discovery is either unavailable or more limited than in litigation

is preposterous." *Stewart v. Paul, Hastings, Janofsky & Walker, LLP*, 201 F. Supp. 2d 291, 292

(S.D.N.Y. 2002). Parties to arbitration agreements – including Plaintiff and Southwest – routinely

agree to avoid the costs and burdens of full civil discovery, and "must ultimately abide by the rules to which [they] agreed." *Henrichs Grain, Inc. v. Cargill*, No. 09-1029, 2010 WL 431900, at *5 (C.D. Ill. Jan. 28, 2010) (rejecting unconscionability argument premised upon arbitral prohibition on requests for production of documents).

Plaintiff's argument regarding discovery is, in the words of the *Stewart* case, "doubly preposterous," because the ADR Agreement permits arbitrators to order additional discovery if they deem it necessary for a particular claim. Dkt. 71-1, Vasquez Decl., Ex. 1, p. 5 (providing for one deposition, expert discovery, five interrogatories, and three requests for production, and the arbitrator can determine that up to two additional depositions are necessary). Here, it is left to the discretion of the arbitrator to expand discovery. *Id.*

Plaintiff further argues that the ADR Agreement is unconscionable because of fees and costs that may be imposed upon her by an arbitrator due to her continued attempts to bring litigation in lieu of arbitration. *See* Dkt. 82 at 13. It is undisputed that under the ADR Agreement, Southwest will pay all of the costs of arbitration, including administrative fees. Dkt. 71-1, Vasquez Decl., Ex. 1, p. 6. This is not a situation where Plaintiff can demonstrate that the agreement is silent with respect to costs and fees. *Compare Green Tree Fin. Corp.-Al. v. Randolph*, 531 U.S. 79, 90 (2000) (plaintiff concerned about arbitration agreement's "silence" with respect to costs and fees). Even in such a situation, the Seventh Circuit will uphold arbitration agreements where there is no evidence that the arbitration costs themselves will be prohibitive. *Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 557 (7th Cir. 2003) (plaintiffs "have not offered any specific evidence of arbitration costs . . . prohibitive or otherwise"); *Baumann v. Finish Line, Inc.*, 421 F. App'x 632, 635 (7th Cir. 2011) (specific evidence of why arbitration is prohibitively expensive required to invalidate arbitration agreement). Again, the fact that Southwest could theoretically ask an arbitrator to award

it fees and costs it incurred in enforcing its ADR Agreement is not properly before the Court – that is a decision to be made by an arbitrator. Dkt. 71-1, Vasquez Decl., Ex. 1, p. 3 ("All disputes concerning the scope and/or coverage of a claim or a party must be resolved by the Arbitrator rather than a court."); *see also id*. at 6 (Southwest can seek to stay the arbitration process pending payment of fees and costs if litigation pursued in lieu of arbitration). Regardless, Southwest has no intention of seeking to recover fees incurred with respect to Plaintiff's challenge to arbitration under the FAA, as that challenge has prevailed. And, any such request for a stay of proceedings will be addressed in arbitration, not by this Court.

Finally, to the extent that the Court determines it has authority to assess the ADR provisions raised by Plaintiff, it must do so in light of the ADR Agreement's severability clause, which requires that any provision deemed invalid or unenforceable "shall be deemed to be modified so that its purpose can lawfully be effectuated and the balance of this ADR Program shall remain in full force and effect," or be severed such that it "shall not affect the validity or enforceability of the other provisions." *Id.* at 8. These provisions must be read in a manner that results in enforcement of Plaintiff's arbitration agreement, not avoidance of it. *Tecnomatic, S.p.A.*, 2018 WL 683821, at *11 (collecting cases and noting "strong public policy" under Illinois law to enforce arbitration contracts).

## IV.     The Workplace Transparency Act Does Not Impact the ADR Agreement.

In a last-ditch effort to avoid individually arbitrating her FLSA claims, Plaintiff wrongly asserts that Illinois' Workplace Transparency Act ("WTA"), 820 ILCS 96/1-1, voids her mutual agreement with Southwest that both parties will arbitrate certain "Covered Claims." Dkt. 71-1, Vasquez Decl., Ex. 1, p. 1 (parties are "mutually agreeing to submit certain legal disputes to an arbitral, rather than judicial forum"). Covered Claims specifically include claims arising under the

FLSA, claims related to "wages or any other compensation," and claims related to "hours worked, breaks, or rest periods." *Id*. at 2.

First, it bears noting that in the WTA, the Legislature recognized "the right of parties to freely contract over the terms, privileges and conditions of employment as they so choose." 820 ILCS 96/1-5. The WTA, by its terms, is limited to agreements that contain unilateral conditions of employment, which serve to perpetuate "unlawful discrimination and harassment in the workplace." *Id.*; *see also id.* at 96/1-25. Here, Southwest and Plaintiff have mutually agreed to arbitrate claims, including Plaintiff's pending wage-and-hour claims, that are not within the purview of the WTA, because these claims do not involve "unlawful employment practices" under the "Illinois Human Rights Act, Title VII of the Civil Rights Act of 1964, or any other related state or federal rule or law that is enforced by the Illinois Department of Human Rights or the Equal Employment Opportunity Commission." *Id.* at 96/1-15.

The fact that the ADR Agreement also addresses some limited arbitration of harassment and discrimination claims not raised in Plaintiff's lawsuit is irrelevant,[2] because Southwest's ADR Agreement meets all of the requirements for a mutual condition of employment set forth in the WTA. *Id.* at 96/1-25(c).[3] In any event, Plaintiff's request to entirely invalidate her ADR Agreement to arbitrate wage-and-hour claims is not a remedy available under the WTA itself. Any arbitration agreement that arguably violates the WTA (which Southwest's mutual arbitration program does

---

[2] "Covered claims" under the ADR Agreement do "not include claims under Title VII of the Civil Rights Act of 1964 or any tort related to or arising out of sexual assault or harassment . . . ." Dkt. 71-1, Vasquez Decl., Ex. 1, pp. 2-3.

[3] As examples, the ADR Agreement does not prohibit communicating with or filing charges with the EEOC or any federal/state agencies or participating in related proceedings; it provides for reporting of criminal conduct outside of arbitration; and it permits making truthful disclosures required by law or process, all of which comply with the WTA. Dkt. 71-1, Vasquez Decl., Ex. 1, pp. 2-3. Further establishing mutuality, Southwest agrees that *it* must arbitrate all legal disputes it could otherwise file against an employee in court. *Id.* at 1.

not), is void only "to the extent" the arbitration agreement prevents reporting discrimination/harassment, or denies rights or remedies related to discrimination/harassment, and in such situations, those offending provisions are "severable." 820 ILCS 96/1-25(a), (b). Again, these provisions of Southwest's ADR Agreement are not before the Court, which is required to interpret the Agreement in a manner designed to enforce its provisions. *Tecnomatic, S.p.A.*, 2018 WL 683821, at *11 (courts applying Illinois law enforce arbitration agreements because of strong public policy in favor of freedom to contract and judicial enforcement of arbitration contracts).

## CONCLUSION

For the reasons above as well as those set forth in Southwest's Renewed Motion to Compel Arbitration and in Southwest's Renewed Motion to Strike Class allegations (Dkt. 70-73), Southwest respectfully requests that the Court enter an Order compelling individual arbitration, and staying this litigation pending arbitration, consistent with the terms of the ADR Agreement.

Dated: September 6, 2022                     Respectfully submitted,

                                             SOUTHWEST AIRLINES CO.

                                             By: /s/ *Melissa A. Siebert*
                                                    One of Its Attorneys

                                             Melissa A. Siebert (masiebert@shb.com)
                                             Kathleen M. Ryan (kxryan@shb.com)
                                             SHOOK, HARDY & BACON LLP
                                             111 S. Wacker Drive, Suite 4700
                                             Chicago, Illinois 60606
                                             Telephone: (312) 704-7700
                                             Facsimile: (312) 558-1195

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 6, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all Counsel of Record.

/s/ *Melissa A. Siebert*